

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-5-1999

# In Re: Lan Assoc

Precedential or Non-Precedential:

Docket 98-5434

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"In Re: Lan Assoc" (1999). *1999 Decisions.* Paper 275.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/275

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 5, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-5434

IN RE: LAN ASSOCIATES XI, L.P.

PATRICIA A. STAIANO,
UNITED STATES TRUSTEE

v.

JAMES J. CAIN,
TRUSTEE FOR LAN ASSOCIATES XI, L.P.,
        Appellant

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 98-CV-2286
(Honorable Joseph E. Irenas)

Argued April 29, 1999

Before: SCIRICA, ROTH, and McKAY,* Circuit Judges.

(Filed October 5, 1999)

_____

*The Honorable Monroe G. McKay, United States Circuit Judge for the
Tenth Judicial Circuit, sitting by designation.

ARTHUR H. JONES, JR.,
 ESQUIRE (ARGUED)
RONALD L. GLICK, ESQUIRE
Mesirov, Gelman, Jaffe, Cramer
 & Jamieson
1735 Market Street, 37th Floor
Philadelphia, Pennsylvania 19103-
 7598

 Attorneys for Appellant

ROBERT J. SCHNEIDER,
 ESQUIRE (ARGUED)
PATRICIA A. STAIANO,
 UNITED STATES TRUSTEE
DONALD F. WALTON,
 ASSISTANT U.S. TRUSTEE
Office of the United States Trustee
One Newark Center, Suite 2100
Newark, New Jersey 07102

 Attorneys for Appellee

JOSEPH I. WITTMAN, ESQUIRE
National Association of Bankruptcy
 Trustees "NABT"
435 S. Kansas Avenue - 2nd Floor
Topeka, Kansas 66603-3401

 Attorney for Amicus Curiae-
 Appellant

OPINION OF THE COURT

McKAY, Circuit Judge.

The standing trustee in this matter, Appellant James J. Cain, appeals from a district court order which reversed a bankruptcy court award of final compensation in the amount of $184,888.25 and $999.40 in costs. Based on the language of 11 U.S.C. S 326(a), the district court held that the trustee should not have received compensation based

on a $7,781,200.00 credit bid sale. The district court also determined that the bankruptcy court erred in considering factors other than those enumerated in 11 U.S.C.S 330(a) in determining the trustee's fee. The trustee argues that the district court's interpretation of S 326(a) was improper and that the determination of a fee award is not limited to the factors enumerated in S 330(a). Consequently, the trustee urges us to reinstate the bankruptcy court's fee determination. We exercise jurisdiction pursuant to 28 U.S.C. SS 158(d) and 1291.

I.

The debtor, Lan Associates XI, L.P., commenced this action on July 6, 1992, by filing a voluntary petition under Chapter 11 of the Bankruptcy Code. Mr. Cain was subsequently appointed as Chapter 11 trustee. The debtor's principal asset was a parcel of property consisting of two office complexes in Marlton, New Jersey, which was subject to a mortgage in favor of First Fidelity Bank, N.A. Although the debtor initially valued the property at $9,000,000.00, it was later appraised at a fair market value of $9,727,000.00 with a liquidation value of $7,781,200.00. During the bankruptcy proceedings, First Fidelity asserted a secured claim of $12,865,434.55.

Pursuant to the Chapter 11 proceedings, the trustee acted as landlord for the office complexes for eighteen months. Accordingly, by Order dated April 8, 1993, the trustee was awarded interim compensation of $28,665.51 based on disbursements of $949,183.54. Because the trustee had rendered approximately 163.5 hours of service as of the date of that award, his compensation as Chapter 11 trustee amounted to approximately $175.00 per hour.

On May 21, 1993, the Chapter 11 proceeding was converted into a Chapter 7 proceeding and Mr. Cain was reappointed as Chapter 7 trustee. Although the trustee alleged that he was prepared simply to abandon the property and allow First Fidelity to foreclose on it, First Fidelity offered to purchase the property through a credit bid at the liquidation price of $7,781,200.00.1 In connection

_____

1. Section 363(k) of the Bankruptcy Code authorizes secured creditors to purchase property through credit bids. See 11 U.S.C. S 363(k) (stating

with the purchase, First Fidelity offered to allow the trustee to retain $372,387.00 from the cash collateral provided to the trustee by First Fidelity to cover administrative expenses and provide a distribution for unsecured creditors.2 First Fidelity also offered to waive any deficiency claim it had remaining against the estate after the sale.

In response to First Fidelity's credit bid offer, the trustee filed a motion and a certificate in support of the motion to sell the property at a private sale. See J.A. at 76–85. The certificate itemized the anticipated administrative expenses of the sale, including the trustee's anticipated commission of $233,616.00 based on the total sale price of $7,781,200.00 and an additional $70,000.00 in commissions based on rents received for the property. The certificate also referred to the $372,387.00 in cash collateral which First Fidelity agreed the trustee could retain for payment of administrative expenses and distribution to unsecured creditors and indicated that the remaining $7,408,813.00 of the sale price would be applied to the mortgage. See id. at 80. The trustee further explained in the certificate that he agreed to contribute $83,346.00 out of his anticipated compensation to provide a distribution for the unsecured creditors. According to the trustee, once the administrative expenses were paid, $62,500.39 would remain for the unsecured creditors,

---

that at a sale "of property that is subject to a lien that secures an allowed claim, . . . the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property").

2. We think the record is fairly clear that the $372,387.00 was part of the total purchase price, rather than an amount over and above the purchase price. See J.A. at 80 (indicating that $7,408,813.00 of purchase price would go to mortgage and $372,387.00 would go to an "[a]llocation [f]or [e]xpense[s] [a]nd [c]reditors"); id. at 98 (Trustee's Deed stating total sale price as $7,781,200.00). Nonetheless, the United States Trustee displays some confusion on the matter. See Appellee's Br. at 6 n.2. The bankruptcy court will need to resolve this matter on remand. In any event, both the district court and the U.S. Trustee indicate that the $372,387.00 may be counted as part of the trustee's compensation base. See In re Lan Assocs. XI, L.P., No. CIV. A. 98–2286, 1998 WL 467100, at *8 n.8 (D.N.J. Aug. 12, 1998); Appellee's Br. at 6 n.2.

4

which would amount to "a distribution of approximately 25%" of the $250,000.00 in unsecured claims. Id.

To prepare for the sale, the trustee forwarded a Notice of Private Sale to all creditors and parties in interest, including the United States Trustee, Appellee in this action. The notice stated that the sale was to be "free and clear of all liens." Id. at 88. Although the bankruptcy court received an objection to the sale from one creditor, the court approved the sale by Order dated February 14, 1994, see id. at 92, and the sale took place on April 18, 1994.

In October 1994, the trustee filed an interim application for an additional $204,522.76 in commissions and $999.40 in expenses. See id. at 106, 109. To calculate the amount of the commissions, the trustee first added the $7,781,200.00 from the credit bid sale to $2,763,942.42 in operating revenues from the property. He then requested $316,534.27 in compensation based on the maximum percentages set forth in 11 U.S.C. S 326(a). See id. at 113. From this amount, the trustee subtracted the $28,665.51 he previously had received in interim compensation and the $83,346.00 which he had agreed to contribute to the unsecured creditors, which resulted in an amount of $204,522.76.

Having received no objection to the interim fee application, the bankruptcy court held a hearing on the application on December 1, 1994. At the hearing, "the court questioned the amount of the trustee's commission, as it translated into an hourly rate, and questioned the amount of the distribution intended for unsecured creditors." Attach. to Appellant's Br. (Bankr. Ct. Op. at 7 (footnote omitted)). However, no one raised the issue of whether the credit bid could be included in the base on which the trustee's fee was calculated at the hearing. See id. (Bankr. Ct. Op. at 8). The bankruptcy court approved the trustee's application by Order filed December 2, 1994, see J.A. at 159, and he was paid on December 6, 1994. See Attach. to Appellant's Br. (Bankr. Ct. Op. at 8).

On April 17, 1995, the trustee sought authorization to make an interim distribution to the unsecured creditors in the amount of $62,500.39. Because the unsecured claims

5

which remained outstanding amounted to $328,538.03, this payment amounted to only a 19% dividend to the unsecured creditors. The bankruptcy court approved the distribution without objection, and the payments were made on May 15, 1995. See id.

On November 13, 1995, the trustee submitted a final report to the bankruptcy court. See J.A. at 173. In the report, the trustee sought confirmation for the two prior interim payments he had received, but he did not seek additional compensation. One year later, on November 13, 1996, the U.S. Trustee submitted an objection to thefinal report. See id. at 226. The U.S. Trustee argued that the amount of the credit bid was improperly included in the base on which the trustee's compensation was calculated, and as a result, the trustee had been overpaid by $142,449.40.[3] The U.S. Trustee requested the court to order the trustee to disgorge this amount with interest and to disburse the disgorged funds to the unsecured creditors.

Following a hearing on December 12, 1996, the bankruptcy court approved the trustee's final report and ordered final compensation in the amount of $184,888.25 and $999.40 in costs. See Attach. to Appellant's Br. (Bankr. Ct. Order at 2). Because the trustee had anticipated a 25% dividend to the unsecured creditors but, in fact, provided only a 19% dividend, the court ordered the trustee to disgorge an additional 6% dividend of $19,634.51.[4] In making its determination, the bankruptcy court first reviewed the language of S 326(a) and the relevant case law and concluded "that under the limited circumstances here, where the secured creditor has consented to the arrangement, and where the unsecured creditors are

_____

3. According to the U.S. Trustee, the trustee collected $1,333,503.14 as Chapter 11 trustee, and $1,679,079.80 as Chapter 7 trustee. Based on these amounts, the U.S. Trustee argued that the maximum amount of commissions to which the trustee was entitled was $90,738.87. See J.A. at 235.

4. The bankruptcy court rejected the trustee's arguments that the U.S. Trustee was estopped from challenging the compensation award based on principles of collateral estoppel, equitable estoppel, and laches. The parties did not challenge these rulings before the district court, nor do they raise them in this appeal.

6

receiving some benefit from the transfer, the trustee may base commissions on the total purchase price of the asset transferred, including the credit bid of the purchaser/lienholder." Id. (Bankr. Ct. Op. at 17). The court then conducted a reasonableness assessment of the amount of the award pursuant to 11 U.S.C. S 330(a). Because "both a percentage-based calculation and a reasonableness analysis" must be conducted in establishing an appropriate award, id. (Bankr. Ct. Op. at 31), the bankruptcy court initially considered the amount of the requested award in relation to the maximum percentage set forth in S 326(a). It then examined the factors enumerated in S 330(a)(1) and concluded that the amount requested by the trustee was reasonable. Finally, although the court noted that its reasonableness assessment was "based on the statutorily articulated factors," id. (Bankr. Ct. Op. at 33), it

> readily acknowledge[d] that [it was] influenced . . . by the procedural history of this case, including four notices to the [U.S. Trustee] of the contemplated compensation, the timing of the first objection by the [U.S. Trustee], nearly two years after the award was entered and paid, and the potential for hardship to the trustee in the event that substantial disgorgement [was] required.

Id. (Bankr. Ct. Op. at 33-34).

The U.S. Trustee appealed the bankruptcy court's fee award to the United States District Court for the District of New Jersey which reversed the bankruptcy court's decision and remanded for a new determination of the trustee's compensation. See In re Lan Assocs. XI, L.P., No. CIV. A. 98-2286, 1998 WL 467100, at *10 (D.N.J. Aug. 12, 1998). Noting that "[t]here is no ambiguity in S 326(a)," the court interpreted S 326(a) according to its "plain meaning" and found that "[n]either property nor value is `moneys' within the meaning of the statute." Id. at *6. Consequently, the court concluded "that under a literal application of S 326(a) the value of a credit bid portion of a S 363(b) sale is not `moneys disbursed or turned over . . . to a party in interest,' and cannot be used to calculate the maximum allowable amount of trustee compensation." Id. Although the court

7

held that the plain language of the statute was sufficient to resolve the case, it also explained that the legislative history supported its interpretation of S 326(a). See id. at *8. With respect to the bankruptcy court's reasonableness assessment, the district court held that the bankruptcy court's consideration of the S 326(a) cap on trustee consideration was "erroneous as a matter of law." Id. at *9. The district court also concluded that the bankruptcy court improperly considered the potential hardship to the trustee and the lengthy period of time between the trustee'sfinal report and the U.S. Trustee's filing of its objections in determining reasonableness. See id. at *10. However, because "it [was] impossible to discern whether the bankruptcy court materially relied on these [three] factors," the district court simply instructed the bankruptcy court not to consider them on remand. Id.

In this appeal, the trustee challenges both the district court's determination that the credit bid should not have been used to calculate the trustee's compensation and its conclusion that the bankruptcy court erred by considering the maximum percentages set forth in S 326(a), the procedural history of the case, and the potential hardship to the trustee in conducting its reasonableness assessment pursuant to S 330(a). The U.S. Trustee urges this court to uphold the district court's exclusion of the credit bid from the calculation of the maximum compensation award under S 326(a) and its conclusion that the reasonableness analysis should be limited to the factors enumerated in the statute.

Because the district court sat as an appellate court reviewing an order of the bankruptcy court, we exercise plenary review of its decision. See Interface Group–Nev., Inc. v. TWA, Inc. (In re TWA, Inc.), 145 F.3d 124, 130 (3d Cir. 1998). This court reviews the bankruptcy court'sfindings of fact for clear error and its conclusions of law under a plenary standard. See id. at 131; Precision Steel Shearing, Inc. v. Fremont Fin. Corp. (In re Visual Indus., Inc.), 57 F.3d 321, 324 (3d Cir. 1995).

8

II.

This court has not previously addressed the
appropriateness of including the value of a credit bid in the
base on which a trustee's compensation is calculated under
11 U.S.C. S 326(a). The trustee argues that the amount of
a credit bid should be included in the compensation base.
According to the trustee, because the encumbered property
was actually sold to First Fidelity and not simply
abandoned or turned over, an exchange of value occurred
which was sufficient to bring the transaction within the
meaning of 11 U.S.C. S 326(a).5 The trustee further
contends that there is no reason to distinguish between a
credit bid sale to a secured creditor and a sale free and
clear of liens to a third party and that distinguishing
between the two transactions elevates form over substance.
The trustee explains that the credit bid should be included
in the base just as the entire sale price from a sale free and
clear of liens to a third party is counted, including the
amount used to pay off the liens. See Appellant's Reply Br.
at 2.6 The U.S. Trustee responds that not only does the vast

_____

5. The National Association of Bankruptcy Trustees, which filed an
amicus curiae brief in this matter, similarly argues that the value of
credit bid transactions should be included in the compensation base
under S 326(a). The NABT points out that one of the definitions of
"money" employed by the district court was"a measure of value," Amicus
Br. at 5, and that an exchange of property certainly involves an
exchange of value. Because this argument closely resembles those of the
trustee, we examine it in the course of our discussion. We decline to
address additional arguments raised by the NABT. See Kamen v. Kemper
Fin. Servs., Inc., 500 U.S. 90, 97 n.4 (1991) (stating that Court
ordinarily
does not address arguments raised only by amici curiae); Newark
Branch, NAACP v. Town of Harrison, N.J., 940 F.2d 792, 808 (3d Cir.
1991) (indicating that court has discretion " `to determine the fact,
extent, and manner of participation by the amicus' " (citation omitted)).
6. The U.S. Trustee emphasizes the fact that in the certification
requesting permission to sell the property the trustee indicated that
selling the property would allow him to pursue a deficiency claim against
the debtor's general partner, Antonio Reale. While it is true that the
trustee so indicated, he also stated in the same document that he "ha[d]
not made any decision as to whether [he] will bring th[e] [11 U.S.C. S 72]
action" against Mr. Reale and that he would evaluate the claim "after the
deficiency [was] determined and . . . after Mr. Reale's financial
condition
[was] re-evaluated." J.A. at 80-81. Further, because there is no
information in the record regarding the reasons why the potential claims
against Mr. Reale were abandoned, we have no basis for assessing this
fact and consider it irrelevant to our analysis and decision.

majority of cases support the district court's strict interpretation of S 326(a) but also the interpretation complies with well-established canons of statutory construction and is supported by the legislative history of the statute.

Sections 326(a) and 3307 of the Bankruptcy Code "control the determination of the amount of compensation to be awarded trustees appointed in a case under Chapter 7 or Chapter 11." In re Biskup, 236 B.R. 332, 335 (Bankr. W.D. Pa. 1999). Section 330 authorizes bankruptcy courts to award reasonable compensation to trustees. See Garb v. Marshall (In re Narragansett Clothing Co.), 210 B.R. 493, 496 (B.A.P. 1st Cir. 1997). Section 330's allowance of reasonable compensation is subject to the maximum percentages set forth in S 326(a), which provides in full:

> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceedfifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, and three percent on any amount in excess of $3,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. S 326(a) (emphasis added). Courts have emphasized repeatedly that a trustee is not entitled to the maximum fee allowed under S 326(a); "[t]he maximum compensation allowable under S 326(a) is awarded to a . . . trustee only in cases in which the result obtained and the benefit realized by the estate are exemplary." Narragansett Clothing, 210 B.R. at 496; see also Biskup , 236 B.R. at 336 ("The language of S 326 is permissive rather than mandatory in that it fixes the maximum compensation of a

_____

7. Sections 326(a) and 330(a) of the Bankruptcy Code were amended in 1994. See Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, S 107, 108 Stat. 4111; Pub. L. No. 103-394, S 224(b), 108 Stat. 4119, 4130. Because this case was commenced prior to October 22, 1994, however, the amended provisions do not apply. Accordingly, in this opinion we refer only to the pre-1994 amendment versions ofSS 326(a) and 330(a).

trustee, and it is not to be construed as an entitlement to the maximum fee specified."); In re Guyana Dev. Corp., 201 B.R. 462, 474 (Bankr. S.D. Tex. 1996) (same); H.R. R EP. NO. 95-595, at 329 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6286 ("Section 330 authorizes compensation for services and reimbursement of expenses of officers of the estate. . . . [T]he compensation allowable under this section is subject to the maxima set out in section[ ] 326.").

"It is axiomatic that our interpretation of any statute begins with the language of the statute." Director, Office of Workers' Comp. Programs v. Sun Ship, Inc., 150 F.3d 288, 291 (3d Cir. 1998) (citing Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)). Having reviewed the language of S 326(a), we are inclined to agree with the district court that the value of a credit bid may not be included in a trustee's compensation base. However, we reach this conclusion for slightly different reasons than those articulated by the district court.

Our primary area of concern with the district court's determination is its confident assertion that the language of S 326(a) is unambiguous. See Lan Assocs., 1998 WL 467100, at *6. In this day and age when we exchange by a keystroke or series of keystrokes what we used to handle only in cash, we do not think that the term "moneys" is so clear as the district court indicated. In fact, one of the definitions cited by the district court refers to money as "a measure of value," see id. at *5 (citing WEBSTER'S THIRD NEW INT'L DICTIONARY 1458 (1986)), which surely is a concept that evolves along with and is dependent upon changing cultural, social, and economic practices and institutions. For example, in today's society the term "money" could easily encompass the concept of credit, which increasing numbers of people use as a method of payment. The term "money" might also encompass property, especially when property is used as a method of payment or a measure of wealth. See WEBSTER'S II NEW COLLEGE DICTIONARY 707 (defining money as "[a] medium that can be exchanged for goods and services and is used as a measure of their values on the market" and as "[p]roperty and assets considered in terms of monetary value"); supra note 5 (describing the NABT's argument that an exchange of property involves an

11

exchange of value). But see In re Brigantine Beach Hotel Corp., 197 F.2d 296, 299 (3d Cir. 1952) (referring to pre-Code statute governing receiver compensation and stating that "[i]t is clear that the word `moneys' in the clause `. . . upon all moneys disbursed or turned over . . . ' is not the equivalent of property."). These reasonable interpretations of the term "moneys" render it ambiguous for purposes of our interpretation of S 326(a). See Taylor v. Continental Group Change in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir. 1991) ("A term is ambiguous if it is subject to reasonable alternative interpretations."); accord United States v. Gibbens, 25 F.3d 28, 34 (1st Cir. 1994) ("A statute is ambiguous if it reasonably can be read in more than one way.").

Because we have concluded that the language of S 326(a) is ambiguous, "we look to legislative history to determine congressional intent." Sun Ship, Inc., 150 F.3d at 291 (citing Adams Fruit Co. v. Barrett, 494 U.S. 638, 642 (1990)). In describing S 326(a), Congress stated in relevant part:

> It should be noted that the base on which the maximum fee is computed includes moneys turned over to secured creditors, to cover the situation where the trustee liquidates property subject to a lien and distributes the proceeds. It does not cover cases in which the trustee simply turns over the property to the secured creditor, nor where the trustee abandons the property and the secured creditor is permitted to foreclose.

H.R. REP. NO. 95-595, at 327 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6283-84. We think that a credit bid transaction is more analogous to the latter situation described in this passage, in which the trustee simply turns over or abandons the property to the secured creditor, than it is to the former, in which the trustee sells the property to a third party and then distributes the proceeds. Whether the secured creditor purchases the property through a credit bid or whether the property is turned over or abandoned to it by the trustee, the end result is the same-- in either case, the secured creditor receives the property in satisfaction of its secured claim. In contrast, when the

12

trustee sells the property free and clear of liens to a third party and then disburses the proceeds, the secured creditor receives a payment, presumably of money (cash or its equivalent), in satisfaction of its claim, which brings the transaction within the literal language of the statute.

The legislative history also indicates that, in imposing the primary duty on the trustee to reduce property to money, Congress intended to distinguish between the concepts of property and money. See United States Trustee v. Messer (In re Pink Cadillac Assocs.), Nos. 96 CIV. 4571, 95-B-4243, 1997 WL 164282, at *3 (S.D.N.Y. Apr. 8, 1997) ("The emphasis on `moneys,' rather than property or value, accords with the drafter's understanding that `[t]he trustee's principal duty is to collect and reduce to money property of the estate for which he serves.' " (quoting H.R. REP. NO. 95-595, at 379 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6335); see also Pritchard v. United States Trustee (In re England), 153 F.3d 232, 237 (5th Cir. 1998) (citing 11 U.S.C. S 704(1) and stating that a narrow reading of S 326(a) harmonizes with the trustee's duty "to reduce the property of the bankrupt's estate to money").

In addition to analyzing what the secured creditor receives, our reading of the legislative history focuses on the role played by the trustee in the transaction. See In re Leedy Mortgage Co., 126 B.R. 907, 916 (Bankr. E.D. Pa. 1991) ("The crucial issue in determining whether certain payments should be considered in the calculations[of trustee compensation] is whether the Trustee was himself actually engaged in the process of making disbursements to secured creditors, as opposed to a situation where sums paid to such creditors do not actually pass through the Trustee's hands."); cf. Pink Cadillac Assocs., 1997 WL 164282, at *3 (stating that the legislative history of S 326(a) "shows that the statute was intended to cover distribution of proceeds after the sale of property" (emphasis added)). In this case, even though the trustee presumably participated in negotiating the credit bid sale, the trustee was not involved in disbursing anything to the secured creditors except for the property. Thus, the credit bid sale more closely resembles an abandonment or turning over of the property to the secured creditor than a sale to a third party.

13

Although we recognize that there may be cases in which the trustee's arrangement and negotiation of a credit bid transaction may prove to be as complex and time consuming as liquidating estate assets by selling them to third parties, cf. Southwestern Media, Inc. v. Rau, 708 F.2d 419, 423 (9th Cir. 1983) (noting potential difficulty of administering encumbered estate assets), these difficulties do not change our analysis.

Further, if Congress had chosen to include property or other consideration in the trustee's compensation base, it certainly knew how to do so. Under the section of the Bankruptcy Act which was replaced by S 326 in the Bankruptcy Code, trustees were compensated differently for "[n]ormal [a]dministration," 11 U.S.C. S 76(c)(1) (repealed 1978) (cited in Collier on Bankruptcy App. Vol. A, Pt. 3(a) at 3-41 (Lawrence P. King ed. in chief, 15th rev. ed. 1999), than for "[p]lans of [r]eorganization." Id. S 76(g). Although the provision describing the compensation for normal administration was substantially identical to the current version of S 326(a), S 76(g) compensated trustees based "upon all moneys disbursed or turned over . . . to any persons, . . . and where under the plan of reorganization any part of the consideration to be paid to unsecured creditors is other than money, upon the amount of the fair value of such consideration." Id. Congress' decision not to include such language in S 326(a) is indicative of its intent to limit trustee compensation to "moneys" in the strict sense of the word.

For these reasons, we are satisfied that Congress did not intend to include credit bids in the trustee's compensation base. Stated differently, we think that Congress intended to limit trustee compensation to "moneys" in the narrow sense, i.e., in the sense of "sums of money,""something generally accepted as a medium of exchange," or "assets or compensation in the form of or readily convertible to cash." WEBSTER'S THIRD NEW INT'L DICTIONARY 1458 (1986).

A corollary of adopting a strict reading of S 326(a) is our rejection of the constructive disbursement theory. This theory allows a trustee to receive compensation for disbursements of property or other consideration which are deemed to be "moneys disbursed or turned over" under

14

S 326(a). Some courts have employed the constructive disbursement theory to increase the trustee's compensation base. See Southwestern Media, 708 F.2d at 423 ("[C]ourts have sometimes treated the sale of an encumbered asset as one that includes a constructive disbursement to the lien creditor, even as to the portion of the asset's value that does not actually enter the estate and is not distributed to the creditor by the trustee."); see, e.g., In re Greenley Energy Holdings of Pa., Inc., 102 B.R. 400, 405 (E.D. Pa. 1989) (holding that funds from guaranteed contracts negotiated by trustee were "constructively disbursed to creditors and therefore [were] `turned over' to creditors" and "thus qualify as being money turned over to the estate upon which trustee's commissions may be based pursuant to section 326(a)"). In addition, a leading authority on bankruptcy law states that in a case of a credit bid sale, "the trustee is deemed to have constructively received and paid out the `proceeds' of the sale." See 3 Collier on Bankruptcy S 326.02[2][f] (citing Southwestern Media for the proposition that disbursements to secured creditors are included in trustee's compensation "even when the mortgagee bids on the property pursuant to section 363(k) and sets off its claim against the purchase price").

We are not persuaded by these authorities' adoption of the constructive disbursement theory for several reasons. First, because the constructive disbursement theory allows the trustee to be compensated for disbursements of property and other types of consideration, rather than simply for money disbursements as Congress defined them, it conflicts with our narrow interpretation ofS 326(a).

Second, our conclusion regarding the scope of S 326(a) and our rejection of the constructive disbursement theory are consistent with a recent Fifth Circuit decision. In Pritchard v. United States Trustee (In re England), 153 F.3d 232, the Chapter 7 trustee was charged with liquidating two jointly administered estates whose assets consisted primarily of real estate. Although the trustee successfully sold some of the property, he reached an agreement with the remaining creditors "to transfer the unsold real estate . . . to two of the creditors in full satisfaction of their claims." Id. at 234. Strictly construing the language of

15

S 326(a), the United States Court of Appeals for the Fifth Circuit held that the trustee was not entitled to compensation on the transfers. See id. at 235-37. According to the court, "[t]he plain language of S 326(a) indicates that the statute caps a trustee's compensation based upon only the moneys disbursed, without any allowance for the property disbursed." Id. at 235.

Third, the majority of district and bankruptcy court cases have limited the basis of a trustee's compensation to cash or its equivalent which the trustee actually disburses to parties in interest. See, e.g., In re Barnett, 133 B.R. 487, 489-90 (Bankr. N.D. Iowa 1991) (strictly interpreting S 326(a) and concluding that the value of a lien attached to property but not paid or disbursed by the trustee could not be included in trustee's compensation base); In re Music Merchandisers, Inc., 131 B.R. 377, 379-80 (Bankr. M.D. Tenn. 1991) (stating that " `[m]oney' means currency or negotiable paper, not other forms of property" and confirming the rule that the amount of a lien in a sale of property subject to that lien is not included in the trustee's compensation base); In re North Am. Oil & Gas, Inc., 130 B.R. 473, 480 (Bankr. W.D. Tex. 1990) ("Unliquidated assets simply `turned over' to the liquidating agent are not includable in the base, because only `moneys' turned over qualify for inclusion in the base." (footnote omitted)); Kandel v. Alexander Leasing Corp., 107 B.R. 548, 551 (N.D. Ohio 1988) (holding that value of money judgment was properly excluded from trustee's compensation base because no money actually passed through trustee's hands); In re New England Fish Co., 34 B.R. 899, 902 (Bankr. W.D. Wash. 1983) (concluding "that the trustee's compensation must be based on actual monies disbursed to parties in interest[ ] and not on assets or settlements which can be construed as a constructive disbursement"). But see In re Toole, 294 F. 975, 977 (S.D.N.Y. 1920) (interpreting same language as construed in North Am. Oil & Gas and finding "moneys" broad enough to encompass securities disbursed).

Our interpretation of S 326(a) and our resulting rejection of the constructive disbursement theory accord with general principles governing a trustee's duties in administering

16

estate assets. The trustee argues that he should receive compensation for administering the property even though it was fully encumbered and therefore of little value to the estate. The trustee claims that his negotiation of the credit bid sale benefitted the estate more than if he had simply abandoned the property to First Fidelity. According to the trustee, "the unsecured creditors would have received nothing . . . if the Property had simply been abandoned to [First Fidelity]." Appellant's Opening Br. at 3.

As several courts have noted, " `[t]he crucial test [for whether a trustee is entitled to compensation] seems to be . . . whether or not the particular property or fund has been justifiably administered in the bankruptcy court, or whether or not the trustee has properly performed services in relation thereto.' " Southwestern Media, 708 F.2d at 423 n.4 (quoting In re Schautz, 390 F.2d 797, 800 (2d Cir. 1968)); see 3 Collier on BankruptcyS 326.02[2][f][ii]. In turn, whether a property or fund is justifiably administered depends on whether administering the asset benefits the general estate. Generally, if no estate benefit is anticipated, then the proper course of action is to abandon the property. See 11 U.S.C. S 554(a) (providing for abandonment of property "that is of inconsequential value and benefit to the estate"). Courts are in agreement that fully encumbered assets are unlikely to benefit the estate, and, therefore, such assets are not likely to be justifiably administered. See In re Stanley, 120 B.R. 409, 411 (Bankr. E.D. Tex. 1990) ("Several [c]ourts have addressed this issue and their holdings are uniform that the proper course for a Chapter 7 Trustee to follow when presented with property of the estate in which there is either no equity or slight equity is to abandon the property."); In re Landreneau , 74 B.R. 12, 13 (Bankr. W.D. La. 1987) (denying trustee's application to sell fully encumbered property by offset bid and stating that "[t]he Bankruptcy Code provides for the abandonment of those assets in which there is no significant equity for the estate. The trustee need not administer such assets."); In re Lambert Implement Co., 44 B.R. 860, 862 (Bankr. W.D. Ky. 1984) (indicating that trustees should not engage in the " `sale of fully secured property where there is no potential equity for general creditors and . . . the trustee enhanc[es]

17

his compensation with no corresponding benefit to the general estate' " (citation omitted)).

It follows from these principles that a trustee who expends time and effort administering fully encumbered assets should not receive compensation except to the extent that his actions provide an actual benefit to the estate. See Music Merchandisers, 131 B.R. at 378 ("One general rule seems to be that the base for calculation of compensation for a sale `subject to liens or encumbrances' excludes the amount of liens and includes only the net or surplus actually paid to (and presumably `disbursed or turned over' by) the trustee."); In re National Enter. Wire Co., 103 B.R. 56, 59 (Bankr. N.D.N.Y. 1989) ("Bankruptcy courts have generally taken the position that a trustee is not entitled to collect statutory commissions and expenses under Code SS 326 and 330 on the sale of fully secured property since the estate would not receive any proceeds to distribute to those creditors holding unsecured."); Landreneau, 74 B.R. at 13 ("The trustee . . . should be compensated[for administering fully encumbered assets] only to the extent his actions actually benefitted the secured creditor."); cf. Pink Cadillac Assocs., 1997 WL 164282, at *4 ("[C]ourts have found that a trustee may not count as `moneys disbursed or turned over' the proceeds of a sale of property that is fully encumbered or that has only slight equity, because the proper course is to abandon or turn over such property."); Barnett, 133 B.R. at 488 (noting that "trustees have been denied a statutory fee based upon the sale price of fully encumbered property or the sale of property enjoying only slight equity"). An additional reason for disallowing compensation for the sale of fully encumbered property is that "there is no justification for the estate, which is created for the benefit of the unsecured creditors, to bear the fee for the benefit of the secured creditor." In re Palm Beach Resort Properties Inc., 73 B.R. 323, 324 (Bankr. S.D. Fla. 1987); see also Stanley, 120 B.R. at 411 (explaining that selling property in which there is no equity "would not result in any benefit to the unsecured creditors and on the contrary can in certain instances result in an actual detriment if the aggregate amount of a Chapter 7 Trustee's commission from the sale of property with only

18

slight equity exceeds the paper equity that appears to exist").

In this case, we agree that the trustee may have achieved a benefit for the estate beyond what it would have received if he had simply abandoned the property to First Fidelity. However, the trustee will receive compensation based on the benefit he achieved for the estate. Not only do the principles outlined above dictate that the trustee should receive compensation for any actual benefit the trustee achieved for the estate but also the U.S. Trustee does not dispute that the compensation base should include this amount. See supra note 2 (indicating that neither U.S. Trustee nor district court disputes that the $372,387.00 in cash collateral which First Fidelity contributed to administrative costs and payment to the unsecured creditors may be counted as part of the trustee's compensation base (citing Lan Assocs., 1998 WL 467100, at *8 n.8; Appellee's Br. at 6 n.2)). Moreover, while there may be instances in which a trustee receives less compensation than he deserves when measured against the amount and complexity of work he performed, see Southwestern Media, 708 F.2d at 423 ("[T]he policy underlying the statutory provision allowing sale proceeds used to liquidate liens to be counted in determining the trustee's fee maximum . . . serves `the purpose of insuring to trustees compensation commensurate with the trustees' services.' "); cf. Stanley, 120 B.R. at 413 (stating that "a strict reading of 11 U.S.C. S 326(a) does not award compensation to the Trustee even though a disposition of the property may have required a great deal of the Trustee's time and effort"), the solution to the potential undercompensation of trustees lies with Congress. See England, 153 F.3d at 237 ("Congress's decision to set a maximum limit on trustee compensation based only upon moneys disbursed may arguably lead to a trustee receiving inadequate compensation in a particular case, but that is a problem for Congress to remedy."); Barnett , 133 B.R. at 489 (noting the existence of meritorious arguments in favor of compensating trustee for constructive disbursements but stating that "the language of the statute can[not] bear their weight"); New England Fish, 34 B.R. at 902 (stating that "[e]ven though this may be a case where the trustee's

19

efforts deserve compensation in excess of the maximum allowable under the law, the solution is not with the Court but with Congress").

In conclusion, despite our disagreement with the district court regarding the ambiguity of the term "moneys," we are persuaded by the legislative history of S 326(a) and by the general policies underlying bankruptcy administration that Congress did not intend to include credit bids in the trustee's compensation base. In the context of a credit bid sale, a trustee's compensation must be based only on moneys actually disbursed or turned over to parties in interest, not on constructive disbursements.

III.

We now address whether the district court erred in concluding that the bankruptcy court considered improper factors in conducting its reasonableness analysis of the trustee's fee pursuant to 11 U.S.C. S 330(a). In this regard, the district court held that it was erroneous as a matter of law for the bankruptcy court to consider the following three factors: (1) the maximum cap on trustee fees contained in S 326(a); (2) the fact that the U.S. Trustee did not file any objection to the fee award until approximately two years after the trustee received it; and (3) the hardship to the trustee that would result from a disgorgement order.

A.

With respect to the bankruptcy court's consideration of the S 326(a) analysis, the trustee claims that the bankruptcy court did not confuse or erroneously combine the two analyses. According to the trustee, the bankruptcy court conducted a complete S 330(a) analysis independently from its determination of the trustee's maximum compensation under S 326(a). The U.S. Trustee contends that the district court was correct in instructing the bankruptcy court not to consider S 326(a) and that, because the trustee does not seek a holding thatS 326(a) should be considered as a factor in the reasonableness analysis, "he does not seek reversal of the District Court's decision on this point." Appellee's Br. at 53. As a result, the

U.S. Trustee requests that we affirm the district court's opinion in its entirety.

We agree with the district court's determination that consideration of the maximum fees set forth in S 326(a) in the course of a S 330(a) reasonableness determination is erroneous as a matter of law. See Lan Assocs. , 1998 WL 467100, at *9; see also Biskup, 236 B.R. at 336 (citing Lan. Assocs. for above proposition); cf. Gill v. Wittenburg (In re Financial Corp. of Am.), 114 B.R. 221, 224 (9th Cir. B.A.P. 1990) (referring to trial court's possible "improper focus on Section 326(a) in determining fees" pursuant toS 330(a)). In determining compensation for trustees, a court begins by applying the criteria set forth in S 330(a). See Financial Corp. of Am., 114 B.R. at 223. The statute provides in pertinent part that a court may award a trustee "reasonable compensation for actual, necessary services rendered. . . based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title." 11 U.S.C. S 330(a)(1). Only after "reasonable fees are determined according to the . . . criteria[ ] [of S 330(a)] [are] a trustee's fees . . . cut down, if required, to the statutory maximum stated in Section 326(a)." Financial Corp. of Am., 114 B.R. at 223. We agree with the Bankruptcy Appellate Panel for the Ninth Circuit that "the provisions of Sections 330(a) and 326(a) are independent of one another. Trustee fees should be set according to the Section 330 criteria, not merely according to the amount of moneys disbursed." Id. at 223-24 (citations omitted). As another court explained, if trustees' fees were to be computed according toS 326(a), "there would have been little need for Congress to have provided separate standards in 11 U.S.C. S 330(a) for calculating the amount of such stipends." In re Roco Corp., 64 B.R. 499, 502 (D.R.I. 1986); see also In re Draina, 191 B.R. 646, 648 (Bankr. D. Md. 1995) (referring to SS 326(a) and 330(a) as "two separate limitations" on trustee fees (emphasis added)). The legislative history accompanying S 326(a) confirms this view:

> [Section 326(a)] simply fixes the maximum compensation of a trustee. Proposed 11 U.S.C. S 330 authorizes and fixes the standard of compensation.. . .

21

> The limits in this section, together with the limitations found in section 330, are to be applied as outer limits, and not as grants or entitlements to the maximum fees specified.

H.R. REP. NO. 95-595, at 327, reprinted in 1978 U.S.C.C.A.N. 5963, 6283. This passage indicates that while Congress intended S 330 to prescribe the standard pursuant to which trustee compensation is awarded, S 326(a) merely caps the fees awarded pursuant to S 330. Congress' description of the separate functions of the statutes demonstrates that a fee determination must involve independent consideration of each statute.

In light of the legislative history and the cases described above, we conclude that the S 330(a) and the S 326(a) analyses must be conducted separately. Although it is difficult to tell whether or how the bankruptcy court relied on S 326(a) in assessing reasonableness under S 330(a), we affirm the district court's determination that the reasonableness determination under S 330(a) should not include consideration of the caps set forth in S 326(a). Thus, we instruct the bankruptcy court to consider S 326(a) independently of its reasonableness assessment under S 330(a) on remand.

B.

The trustee also argues that the district court incorrectly held that the bankruptcy court erred in considering both the U.S. Trustee's delay in objecting to the trustee's final report and the potential hardship to the trustee caused by a disgorgement order under S 330(a). Specifically, the trustee claims that because the factors set forth in S 330(a) are not all-inclusive, the bankruptcy court's apparent consideration of these factors was not erroneous.

"In employing the fee setting criteria of Section 330(a), the bankruptcy judge is accorded wide discretion." Financial Corp. of Am., 114 B.R. at 224; see also In re C & A Enters., Inc., 132 B.R. 303, 307 (Bankr. W.D. Pa. 1991) ("The bankruptcy court has the independent authority and responsibility to determine the reasonableness of compensation."). At least in part, the bankruptcy court's

22

broad discretion is due to the fact that "no matter how close the [c]ourt comes to an objective determination of a reasonable fee, [the fee determination] is still, in the final analysis, a substantially subjective exercise." In re Garland Corp., 8 B.R. 826, 831 (Bankr. D. Mass. 1981); see In re Gillett Holdings, Inc., 137 B.R. 475, 481 (Bankr. D. Colo. 1992) ("[T]he setting of fees . . . is an art, not a science.").

Although many cases apply only the factors enumerated in S 330(a), our research has not revealed any case--apart from the district court opinion in this case--which has expressly stated that a bankruptcy court's reasonableness assessment is limited to only those factors. In fact, we have located two cases which have concluded that the factors set forth in S 330(a) are not exhaustive and that bankruptcy courts may consider relevant factors beyond those listed in the statute. See Roco Corp., 64 B.R. at 504 ("[T]he elements set out in 11 U.S.C. S 330(a) do not purport to be all-inclusive. Other guideposts can--and should--be considered where pertinent and appropriate."); Garland Corp., 8 B.R. at 829 ("The factors laid out in S 330 are not exhaustive, and the Court will consider a totality of factors in awarding fees."); 9 AM. JUR. 2D Bankruptcy S 322 (1991) (same); cf. Greenley Energy, 102 B.R. at 406 (listing factors to consider as the results achieved by the trustee, the time spent, the intricacy of problems involved, the amount involved, and the opposition encountered). Moreover, in spite of the factors enumerated in S 330, many courts continue to employ the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) (determining the reasonableness of attorneys' fees).8 See 3Collier on Bankruptcy S 330.04[3]

_____

8. The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform
the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. See Johnson, 488 F.2d at 717-19.

(stating that courts have relied on Johnson factors to assess the reasonableness of compensation under both the Bankruptcy Act and the Bankruptcy Code and that "[m]any courts continue to follow Johnson"); see, e.g., Garland Corp., 8 B.R. at 831 (employing twelve Johnson factors to determine trustee's fee under S 330(a)); cf. Grant v. George Schumann Tire & Battery Co., 908 F.2d 874, 877–78 (11th Cir. 1990) (considering Johnson factors in determining trustee's attorneys' fees pursuant to S 330(a)); First Nat'l Bank of Lea County v. Niccum (In re Permian Anchor Servs., Inc.), 649 F.2d 763, 768 (10th Cir. 1981) (adopting Johnson factors for purposes of determining attorneys' fees in bankruptcy cases); In re Malewicki, 142 B.R. 353, 355 (Bankr. D. Neb. 1992) (employing twelve Johnson factors to determine fee for Chapter 13 debtor's counsel pursuant to S 330(a)); Gillett Holdings, 137 B.R. at 481 & n.10 (Bankr. D. Colo. 1992) (assessing fees for debtor's investment banker based on Johnson reasonableness factors). Mindful of these cases and of the broad discretion bestowed on bankruptcy courts to determine appropriate trustee fees, we hold that the factors enumerated in section S 330(a) are not all-inclusive.

The changes Congress made to S 330 pursuant to the Bankruptcy Reform Act of 1994 support our determination. The amended version of S 330 clearly indicates that in determining a reasonable fee, the court must "consider the nature, the extent, and the value of such services, taking into account all relevant factors." 11 U.S.C. S 330(a)(3). While it appears that additional factors considered under the statute should pertain to the nature, extent, or value of the services, we think that this language clarifies Congress' intent that a reasonableness assessment need not be based solely on the statutorily enumerated factors. The fact that this intent was not clearly articulated in the prior version of S 330 does not preclude this interpretation.

Even though we have held that S 330, even in its pre–1994 amendment form, does not present the court with an exhaustive list of factors to be considered, neither the procedural history of the case nor the potential hardship to the trustee seems to bear significantly on the actual services provided by the trustee. Accordingly, we think that

the relevance of these two factors mentioned by the bankruptcy court is questionable. Because neither we nor the district court can ascertain the extent to which the bankruptcy court relied on these factors, however, we merely instruct the bankruptcy court that although it need not necessarily limit its reasonableness assessment to the statutorily enumerated factors, it should consider on remand only those factors which are somehow pertinent to assessing the trustee's services.9

IV.

In conclusion, the trustee is not entitled to receive compensation on the amount of First Fidelity's credit bid. Additionally, the bankruptcy court should conduct its reasonableness assessment independently of the maximum percentages set forth in S 326(a) and should confine its S 330(a) analysis to factors which have some relevance to the services provided by the trustee. We therefore AFFIRM the district court's reversal of the bankruptcy court's fee award and REMAND to the bankruptcy court for a determination of the final trustee compensation award consistent with this opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit
_____

9. For remand purposes, we take this opportunity to remind the bankruptcy court that while "each factor enumerated by S 330(a) retains independent significance," the factor examining the cost of comparable services "has an overarching role to act as a guide to the value of the services rendered given their nature and extent." In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 849 (3d Cir. 1994); see also In re Marvel Entertainment Group, Inc., 234 B.R. 21, (D. Del. 1999) (concluding, based on Busy Beaver, that "the appropriate market for determining reasonable [trustee] fees . . . depend[s] on the nature of the specific services . . . provided").