**In re Charles Eugene BLAIR, Debtor.**

No. 01–17265–A7.

United States Bankruptcy Court, E.D. California.

Aug. 30, 2004.

John P. Eleazarian, Fresno, CA, for Debtor.

Michelle G. Oleksa, Fresno, CA, for Beth Maxwell Stratton, trustee.

Jeffrey J. Lodge, Fresno, CA, Office of the United States Trustee.

## MEMORANDUM DECISION RE TRUSTEE'S FINAL REPORT AND ACCOUNT AND APPLICATION FOR COMPENSATION

WHITNEY RIMEL, Bankruptcy Judge.

A hearing was held June 23, 2004, on the objection by Debtor Charles Eugene Blair (the "Debtor") to the Chapter 7 Trustee's Application for Compensation. Following the hearing, the court took the matter under submission. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

### Introduction

The issue here is whether the chapter 7 trustee (the "Trustee") may include in her fee base moneys disbursed by the escrow company to secured creditors. The Debtor argues that such disbursements by the escrow company amount to "constructive disbursements" and should not be included in the Trustee's fee base. The court disagrees.

### Factual Background

The Debtor filed his chapter 7 case on August 1, 2001. The United States Trustee appointed Beth Maxwell Stratton as the Trustee for the Debtor's case. On May 19, 2004, the Trustee filed her Final Report and Application for Compensation and Reimbursement (the "FRA").

The FRA lists total receipts of $795,621.42, disbursements of $638,824.60 and a balance of funds of $156,796.82. The Trustee seeks $34,726.47 in compensation and $371.74 in reimbursement of ex-

penses.[1] The United States Trustee reviewed and approved the FRA.

The Trustee's Narrative, attached to FRA, states that all claims were paid in full with interest and there is a surplus to the Debtor. The Trustee explains that there were substantial non-exempt assets in this case. The Trustee sold the Debtor's home (the "Rose Avenue Property"), which consisted of a house and several acres of almond trees, free and clear of liens to a third party in October 2002. While the Trustee marketed the Rose Avenue Property, secured creditor Mary Bowman leased the property from the Trustee, pursuant to a court order, so that the almond trees could be properly cared for pending the sale of the property. All allowed secured liens against the Rose Avenue Property were paid in full from the sale.

The Debtor was the co-owner of an apartment complex (the "Apartments"). The Trustee filed a lawsuit against the co-owner of the Apartments to allow a sale pursuant to Bankruptcy Code § 363. Shortly before trial, the Trustee and the co-owner entered into a stipulated judgment allowing for the sale of the Apartments if the Debtor and the co-owner did not pay the Trustee enough to pay all the allowed claims in full. The Debtor and co-owner failed to make the required payment, and in October 2003 the Trustee sold the Apartments free and clear of liens to a third party.[2]

On June 16, 2004, the Debtor filed his Objection to the FRA (the "Objection").

The Objection argues that although the FRA alleges total receipts of $795,621.42, the Trustee's bank account record, which is attached to the FRA, shows that the Trustee only received $327,777.55. The Objection alleges that the difference was distributed directly to secured creditors from the escrow holders in the sales of the Rose Avenue Property and Apartments. The Debtor argues that Section 326(a) only allows the Trustee to be compensated based on the funds disbursed directly by the Trustee, which does not include amounts distributed by the title company.

*Analysis*

The issue here is whether the Trustee may include in her fee base moneys disbursed by the escrow company to secured creditors after the Trustee sold the properties subject to their security interests. The Debtor contends that disbursed funds which were directly distributed by the escrow company amount to "constructive disbursements" and should not be included in the Trustee's fee base. However, the Debtor's reliance on the constructive disbursement theory is misplaced. That theory focuses on *what* was disbursed, while this case involves a dispute based on *who* disbursed the sale proceeds.

The court must determine whether the Trustee properly calculated her fee base when she included moneys which were directly disbursed by the escrow agent she employed during sales of assets. Section 326 fixes the maximum compensation payable to a trustee.[3] Section 326(a) provides

1. The FRA also seeks $19,123.12 in compensation and $1,030.80 for the Trustee's attorney and $3,449.50 in compensation for the Trustee's accountant. These professionals' employment has been approved by the court. There was no objection by the Debtor or any other party to their final applications for compensation. The court granted their applications for compensation at the hearing on June

23, 2004, having found that the compensation requested was reasonable.

2. The Rose Avenue Property and the Apartments were sold free and clear of several liens against each property which were in dispute.

3. Section 330, which authorizes compensation for services and reimbursement of ex-

in relevant part that "... the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services ... upon all *moneys disbursed or turned over in the case by the trustee* to parties in interest, excluding the debtor, but including holders of secured claims." 11 U.S.C. § 326(a) (emphasis added).

The courts have provided guidance in determining whether a trustee's fee base passes muster under § 326(a). Compensation seems to be based on whether the trustee justifiably administered the particular property during the bankruptcy case and whether the trustee properly performed services in relation to that property. 7 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 326.02[2][f][ii] (15th ed. Rev.2003)

In *Southwestern Media, Inc. v. Rau,* the Ninth Circuit examined the purpose of Section 76(c) of the Bankruptcy Act.[4] 708 F.2d 419 (9th Cir.1983). The Ninth Circuit concluded that the trustee compensation provision insures that a trustee's compensation is commensurate with the trustee's services so the statute "recognizes that the trustee's administration of an estate containing encumbered assets may sometimes prove equally difficult and time-consuming as if the assets were unencumbered." *Id.* at 423. When determining whether the trustee properly calculated his fee base, the Ninth Circuit focused on his actions while administering the estate. Although *Rau* was decided under the Bankruptcy Act of 1898, it established the proposition that the purpose of the fee cap, under the Act or the Code, is to ensure that trustee compensa-

tion is "commensurate with trustee's services." See, *In re Hages,* 252 B.R. 789 at 794 (Bankr.N.D.Cal.2000).

The Third Circuit has looked to legislative history to determine congressional intent underlying Section 326(a). *In re Lan,* 192 F.3d 109 (3rd Cir.1999). In describing Section 326(a), Congress stated in relevant part:

> It should be noted that the base on which the maximum fee is computed includes moneys turned over to secured creditors, to cover the situation where the trustee liquidates property subject to a lien and distributes the proceeds. It does not cover cases in which the trustee simply turns over the property to the secured creditor, nor where the trustee abandons the property and the secured creditor is permitted to foreclose.

H.R. REP. NO. 95–595, at 327 (1978), U.S.Code Cong. & Admin.News 1978, 5963, 6283–6284.

Based on the legislative history, the Third Circuit distilled two important factors to determine whether moneys should be included in the trustee's fee base. Both these factors stem from the trustee's primary duty to reduce property to money. *Lan,* 192 F.3d at 117.

 First, the bankruptcy court *must* examine whether the trustee sold assets and whether he disbursed something other than just turning over property to secured creditors. *Id.* Second, the bankruptcy court must find that the trustee justifiably administered a property or fund. This depends on whether administering the as-

---

penses of officers of the estate, including the trustee, refers to Section 326.

**4.** The language of Section 326(a) does not differ materially from the former statute, Section 76(c) of the Bankruptcy Act which states

in pertinent part: "... upon all moneys disbursed or turned over by [the trustee] to any persons, including lienholders ..." 11 U.S.C. § 76(c) (1976).

set benefitted the general estate. *Lan,* 192 F.3d at 119.

The Trustee cited *In re Tyczka,* 287 B.R. 465 (Bankr.E.D.Mo.2002) which directly addresses whether he could include funds disbursed on her behalf by the title company in his fee base. In *Tyczka,* the trustee included in his fee base disbursements of sale proceeds from the debtor's residence to secured creditors even though the disbursements were made by the title company. *Tyczka,* 287 B.R. at 469. The bankruptcy court stated that

> "[i]t is of no consequence that the disbursements of sale proceeds to the secured creditors and for expenses were actually made by the title company, rather than by the Trustee. Trustee authorized these disbursements through his participation in the closing process." *Id.*

Again, the emphasis is on the actions of the trustee in administering the estate.

The Debtor cited *In re Moreno,* 295 B.R. 402 (Bankr.S.D.Fl.2003) to address the issue of who should disburse the cash proceeds for purposes of calculating the Trustee's fee base. In *Moreno,* the trustee calculated her requested fee based upon her having made total disbursements of $72,150.39, even though the trustee had only disbursed $15,284.53, and the difference had been disbursed by a third party. 295 B.R. at 403. This is where the similarity with the facts of this case stops.

In *Moreno,* the balance of the funds was disbursed by a settlement agent on the sale of a parcel of property. Although the trustee in *Moreno* was authorized by the court to sell the property, the court never authorized the settlement agent to represent the trustee or to act as her agent. On that basis the *Moreno* court did not include the balance of the funds disbursed

by the settlement agent in the trustee's fee base. *Moreno,* 295 B.R. at 403.

Here, the court expressly approved the use of an escrow holder and its role in distributing the sale proceeds to secured creditors. The Trustee sought the court's approval of the sale free and clear for both the Rose Avenue Property and the Apartments. In both motions, the Trustee specifically stated how the sale proceeds would be applied at the close of escrow and that the distribution of the sale proceeds was set forth in the Preliminary Report by Fidelity National Title Company.[5] The motion for authority to sell the Rose Avenue Property requests an order authorizing the sale of the properties

> "with the sale proceeds to be applied first to any customary costs associated with closing Escrow, and then as set forth above, *with all sums then remaining to be held in the escrow account until the disputed balance owing on the first Deed of Trust is resolved by stipulation or Court Order;* with any and all sums then remaining being paid over to the Trustee and held with other funds of the Estate pending further order of this Court." (emphasis added).

The motion for authority to sell the Apartments contains similar language regarding the role of the escrow holder and the distribution of the sale proceeds. Both orders approving the sales of the properties also state that "[t]he remaining funds will be held in escrow until further order of this Court, or until lien releases from each of the three disputed lienholders has been received, and then any and all sums remaining shall be paid over to the Trustee."

■ Therefore; when determining whether a trustee properly calculated her

---

5. This report was attached as an exhibit to the motions for authority to sell the properties.

fee base pursuant to § 326(a), the court should examine how the trustee administered the property of the estate. Where a sale has been negotiated and the Trustee obtained approval of the sale which included employment of an escrow agent, the court need not focus on *who* technically disbursed the funds. The emphasis should be on whether the trustee negotiated the sale, whether the trustee disbursed something, rather than just turning over the property, and whether the sale benefitted the estate.

Here, the Trustee put in a substantial amount of work to negotiate sales of the encumbered assets in this case. She determined that even though the properties were encumbered, there was equity available to pay other creditors. She stated that she spent substantial time negotiating with the secured creditors and ensured that all secured creditors received a distribution. The Trustee obtained approval to sell two properties and the court approved her use of an escrow holder. While the Trustee marketed the Rose Avenue Property, she negotiated to lease the Rose Avenue property, so that the almond trees on that property could be properly cared for pending the sale of the property. Such work on the Trustee's part benefitted the estate since all creditors were paid 100% of their claims plus interest and there was a substantial surplus (approximately $25,000) to distribute to the Debtor.

Now the court addresses the Debtor's argument that disbursed funds which were distributed directly by the escrow company amounted to "constructive disbursements," which should not be included in the Trustee's fee base. The "constructive disbursement" theory involves disbursements of *property or other consideration,* deemed to be "moneys disbursed or turned over" under Section 326(a). *In re Lan,* 192 F.3d 109 (3rd Cir.1999). Although there is disagreement among courts on whether to include "constructive disbursements" to calculate a trustee's compensation base, all cases dealing with "constructive disbursements" focus on the nature of the consideration transferred to the creditor.

Since there is no dispute as to what was transferred to the creditors here, the Debtor's reliance on the "constructive disbursement" theory is misplaced. The Trustee sold two properties free and clear to third parties and the allowed claims of the creditors secured by the properties were paid at the trustee's direction, through an escrow agent. There was no credit bid, assumption of mortgage, or agreement to transfer the real property to the secured creditors in full satisfaction of their claims. Therefore, the "constructive disbursement" theory is not applicable in this case.

In any event, the Ninth Circuit has adopted the constructive disbursement theory to increase the trustee's compensation base, and Ninth Circuit precedent is binding authority on this court. In *Rau,* the mortgagee bid on the property pursuant to Section 363(k), and the Ninth Circuit held that the trustee was deemed to have constructively received and paid out the proceeds of the sale. 708 F.2d at 424. In another case, the Ninth Circuit treated the assumption of the existing mortgages as a disbursement and included it in the trustee's fee base even though it did not expressly use the term "constructive disbursement." *York International Building, Inc. v. Chaney (In re York),* 527 F.2d 1061 (9th Cir.1976). Although both of these cases were decided under the Bankruptcy Act, they established the trend to include "constructive disbursements" in a trustee's fee base in the Ninth Circuit. See, *In re McNar,* 120 B.R. 149 at 153 (Bankr.C.D.Cal.1990).

*Conclusion*

The Trustee obtained approval to sell two properties and the court approved her use of an escrow holder. The court is persuaded that the Trustee fulfilled her primary duty to reduce property to money in such a way as to benefit the estate. Therefore, the rationale underlying Section 326(a) is satisfied. The fee base should be calculated accordingly. The Trustee's fee base should include the portions of the sale proceeds disbursed by the title company to the secured creditors.

The Trustee shall submit a form of order consistent herewith.