**In re Reymundo RODRIGUEZ, Sr., SSN 521 96 3547, Adella Rodriguez, SSN 523 92 8034, Debtors.**

**Bankruptcy No. 99–10597 CEM.**

United States Bankruptcy Court, D. Colorado.

Nov. 8, 1999.

---

Stephen E. Berken, Denver, CO, for Debtors.

Jeffrey A. Weinman, Chapter 7 Trustee, Denver, CO, Pro Se.

## OPINION AND ORDER ON ADMINISTRATIVE CLAIM OF JEFFREY WEINMAN

CHARLES E. MATHESON, Chief Judge.

The Debtors commenced this bankruptcy case by the filing of a petition under chapter 7. Jeffrey Weinman, Esq., was appointed as interim trustee ("Weinman"). He investigated the affairs of the Debtors and concluded that the Debtors had failed to keep financial records of their prepetition transactions as required. Accordingly, Mr. Weinman filed an adversary proceeding seeking to bar the Debtors' discharge pursuant to the provisions of 11 U.S.C. § 727(a)(3).

Faced with the prospect of having their discharge denied, the Debtors converted their case to a chapter 13. They have now filed their chapter 13 plan pursuant to which they propose to pay an aggregate of $5,329 into the plan over a three-year period for distribution as provided in the plan. The plan would provide a dividend to unsecured creditors of $545.

Mr. Weinman has now filed an administrative claim in the chapter 13. He seeks allowance of an administrative expense in the amount of $937.50 for his fees for services and for out-of-pocket costs of $83.50 predicated on the time he expended in investigating the Debtors' affairs and in filing the 727 case. Mr. Weinman admits that he recovered no assets in the chapter 7 and made no cash disbursements. No objections were filed to the allowance of his claim. The question of whether his claim should be allowed as filed is before the Court *sua sponte*. This decision enters after notice to Mr. Weinman and a hearing on the issues.

Pursuant to 11 U.S.C. § 503, this Court can allow, as a cost of administration of a bankruptcy estate, compensation and reimbursement of expenses awarded to a trustee or professional pursuant to section 330 of the Code. Under section 330, the court may award to a trustee "reasonable compensation for actual, necessary services rendered by the trustee ... and reimbursement for actual necessary expenses." The Code then sets forth in 11 U.S.C. § 330(a)(3) the factors to be considered by the court in fixing and allowing fees.

As noted, there has been no objection to the requested fees. While this Court may have some reservations concerning the reasonableness of the entire fee claimed, in light of the ultimate disposition of this matter, resolution of this issue is not significant. The Court will allow the fees and the expenses as claimed.

Allowance of Mr. Weinman's fees under section 330 is only the first step. Section 326(a) of the Code acts to place an overall limit on the total fees that can be paid to trustees who serve in cases under chapter 7 and 11 of the Code. Section 326(b) places a similar limit on the fees that can be paid in chapter 12 and 13 cases. Further, because more than one person has served as a trustee in this bankruptcy case, section 326(c) applies and serves to potentially further limit fees payable to the chapter 7 trustee.[1]

Courts dealing with the allocation of fees among multiple trustees (whether they are the same person or multiple persons) reach results that are wholly irreconcilable. For example, some cases take a strict view of the language of section 326(a) and hold that the trustee in a chapter 7 case that converts to a chapter 13 can receive no fees if that trustee did not disburse or turnover monies. *In re Fischer*, 210 B.R. 467 (Bankr.D.Minn.1997); *In re Frost*, 214 B.R. 295 (Bankr.S.D.N.Y.

1997); *In re Berry*, 166 B.R. 932 (Bankr. D.Or.1994). These courts apparently read the reference in the last sentence of section 326(a) to the "trustee" and the "case" to be limited to the person who served as trustee while the bankruptcy case was pending under chapter 7 or 11.

Some courts, feeling that it is unfair to deny a fee to a hard-working chapter 7 trustee, who would be deprived of a potential fee when the case is converted to chapter 13, allow a fee on a quantum meruit principle. *In re Moore*, 235 B.R. 414 (Bankr.W.D.Ky.1999) (discussing and citing various cases allowing fees on this basis). Of course, that is essentially what section 330 mandates. The real problem is not whether a fee should be allowed, the question is the effect of the 326 cap. It is the view of this Court that we must recognize the explicit efforts of Congress to place a cap on the administrative expenses to be born by a bankruptcy estate as compensation for services by the various trustees. This Court cannot accept the proposition that it can ignore the explicit language of section 326 under the rubric of allowing fees on a quantum meruit basis.

Finally, some other courts have resolved the issue, at least where there have been funds recovered and turned over by

---

1. Cases considering this issue consistently refer to section 326(c) of the Code as governing the circumstance where there are "two or more trustees." See e.g. *In re Arius, Inc.*, 237 B.R. 843, 846 (Bankr.M.D.Fla.1999); *In re Frost*, 214 B.R. 295, 297 (Bankr.S.D.N.Y. 1997); *In re Yale Mining Corp.*, 59 B.R. 302, 304 (Bankr.W.D.Va.1986); *In re Schneider*, 15 B.R. 744 (Bankr.D.Kan.1981). Indeed, the legislative history underlying section 326(c) has a similar view. The House and Senate Reports state:

Subsection (c) provides a limitation not found in current law. Even if more than one trustee serves in the case, the maximum fee payable to all trustees does not change. For example, if an interim trustee is appointed and an elected trustee replaces him, the combined total of the fees payable to the interim trustee and the permanent trustee may not exceed the amount speci-

fied in this section. Under current law, very often a receiver receives a full fee and a subsequent trustee also receives a full fee. The resultant "double-dipping," especially in the cases in which the receiver and the trustee are the same individual, is detrimental to the interest of the creditors, and needlessly increases the cost of administering bankruptcy estates.

H.R. Rep. No. 595, 95th Cong. 1st Sess., at 327–328 (1977), U.S.Code Cong. & Admin. News pp. 5963, 6283–6284; S. Rep. No. 989, 95th Cong. 2d Sess., at 38 (1978), U.S.Code Cong. & Admin.News pp. 5787, 5824. In reality, by its explicit terms, section 326(c) only applies in cases where "more than one *person* serves as trustee . . . ."Thus, technically, section 326(c) does not, as Congress supposed, apply in a case where the chapter 7 trustee and the chapter 11 trustee are the same person.

each trustee in cases converted from chapter 11 to chapter 7, by finding that the section 326(a) cap and 326(c) apply separately to the chapter 7 case and the chapter 11 case. *In re Yale Mining Corp.*, 59 B.R. 302 (Bankr.W.D.Va.1986); *Gill v. Wittenburg, (In re Financial Corp. of America)*, 114 B.R. 221 (9th Cir. BAP 1990) *aff'd and remanded by* 946 F.2d 689 (9th Cir.1991) In *Yale Mining*, which was relied on by the court in the *Financial Corp. of America* case, the court analyzes various· Code sections and concludes that the chapter 7 case is separate from the chapter 11 case. However, the court fails to consider section 301 of the Code ("A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter . . . ."); or section 302(a) ("A joint case under a chapter under this title is commenced by the filing with the bankruptcy court of a single petition under such chapter . . . ."); or section 303(b) ("An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title . . ."); or section 348(a) ("Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief."). The *Yale Mining* court also does not recognize the fact that conversion of a case from chapter 7 to chapter 13 under 11 U.S.C. § 706(a) is done by way of "motion" and not by the filing of a new petition. Fed. R. Bank. P. 1017(d). This Court concludes that for purposes of the Code, and specifically for purposes of section 326, there is only one bankruptcy "case" that is commenced by

the filing of an original petition. *In re Monex, Inc.*, 74 B.R. 43 (Bankr.E.D.Tenn. 1987); *In re Custom Rock Products, Inc.*, 75 B.R. 885 (Bankr.D.Or.1987).[2]

There is a clear ʻpolicy under the Bankruptcy Code to see that case trustees are adequately and fairly compensated. It is also clear that Congress meant to cap the administrative fees payable to the persons serving as trustees in these cases. This Court agrees with the analysis in the case of *In re Arius, Inc.*, 237 B.R. 843 (Bankr. M.D.Fla.1999) (which held that the cap in section 326(a) must be applied against all disbursements in the case by whomever made). Applying the cap separately· in each "case" as was done in the *Yale Mining* decision simply permits the very double dipping that motivated Congress to enact section 326(c).

▇▇▇ It is unacceptable and · unwarranted to penalize hard-working interim trustees whose services have contributed to the administration of the bankruptcy estate but who have not actually distributed funds by depriving them of fees even though successor trustees, whether in a case pending under the same chapter or converted to another chapter, are successfully able to make distributions to parties in interest. In order to encourage aggressive action by trustees, the reference to "trustee" in the last sentence of section 326(a) must be read as a generic reference to the composite "trustee" and to the aggregate distributions made in the case by the composite "trustee" to all parties in interest other than the debtor. Such an interpretation necessarily excludes distributions made from one trustee to another. This is consistent with the legislative intent of Congress as indicated above, but it means that, so long as there are some distributions made by some person serving as trustee at some stage of the bankruptcy

---

**2.** One can only speculate what the *Yale Mining* and *Financial Corp. of America* courts might have done had the cases come to them under circumstances where the chapter 11 trustee had dedicated many hours of work to

the preservation of asset values but raised no cash and because of the efforts of the chapter 11 trustee, the successor chapter 7 trustee was able to raise and disburse significant amounts of dollars to the creditors.

case, all of the persons serving as trustee may be allowed reasonable fees for their services to be allocated among them as the case demands. Their aggregate fees, however, may not exceed the amount set by the cap under section 326(a) as applied to the aggregate disbursements. *In re Arius, Inc.*, 237 B.R. at 846–847.

There is, of course, an exception. That exception comes to play when a chapter 7 is converted to chapter 13 because the court, at least, in this district, does not allow the fee for the standing trustee. That fee is set by the U.S. Trustee and is fixed in this district at ten (10) percent (upon all payments under the plan). Moreover, because there are chapter 12 and 13 standing trustees in this district, it is not likely that a trustee would ever be appointed in a chapter 12 or 13 case under 1202(a) or 1302(a), respectively. 11 U.S.C. § 326(b). Regardless, the analysis here is not altered.

In the case now before the Court, the composite "trustee" will, if the chapter 13 plan is fully performed, disburse $5,329 to parties in interest. Her ten percent fee will be $532. Under section 326(a), then, the total amount to be disbursed "in the case by the trustee" is also $5,329. Thus, the fee payable to the chapter 7 trustee is capped at 25 percent of the first $5,000 or less and 10% on any amount in excess of $5,000, which is $1,282.90. That amount is the maximum fee that can be paid to all of the trustees in the aggregate in this case. Because the chapter 13 trustee, by statute and by authorization of the U.S. Trustee, is authorized to receive $532 as compensation, the maximum compensation that can be paid to the chapter 7 trustee, Mr. Weinman, is $750.90, and that is the fee which can be allowed, together with his expenses in the amount of $83.50.

Mr. Weinman's fee, as allowed, is an expense of administration of the chapter 7 estate. 11 U.S.C. § 503(b)(2). If this were a case that had been converted from another chapter to chapter 7, the preconversion expenses of administration would be paid in the chapter 7 as a second tier expense under 11 U.S.C. § 726(b). That is, the expenses of administration of the chapter 7 would have to be paid before the expenses of administration of the preceding chapter which was converted. At least one court has ruled that in a case converted to chapter 13, the postpetition preconversion expenses of a chapter 7 trustee should also be paid as a second tier administrative expense in a chapter 13 in the same manner. *In re Collins,* 210 B.R. 538 (Bankr.N.D.Ohio 1997).

There is a fundamental problem with the holding of the *Collins* case. The Code simply does not so prioritize the administrative expenses in chapter 13 or chapter 11 and there is a sound reason why not. When a case is converted from chapter 13 or chapter 11 to chapter 7, there is always a risk that there will not be sufficient assets available to pay all of the administrative costs of the chapter 7. Congress, in section 726(b) made the policy decision that the chapter 7 expenses must be paid first. But, in chapter 11 and chapter 13 there is no concomitant risk. In those chapters, all administrative expenses of the "estate" must be paid in full as a precondition to confirmation of the plan. *See,* 11 U.S.C. § 1129(a)(9)(A); 11 U.S.C. § 1322(a)(2). Thus, there is no reason to prioritize the administrative expenses between chapters when the case is converted to chapter 13 or chapter 11.

The administrative claim allowed to Mr. Weinman must be paid in full through the Debtors' plan. However, because the fee is capped at a percentage of disbursements to be made out of the Debtors' plan, the fee can properly be paid only as disbursements are made. Thus, Mr. Weinman will be entitled to receive from the chapter 13 estate an amount equal to 25 percent of each distribution until the allowed fee is paid in full. Mr. Weinman remains at risk that his allowed administrative claim may not be paid in full if the Debtors are unable to achieve confirmation of a plan or

if the case is dismissed, but that is simply a risk the system imposes.

This resolution of the issue now before the Court gives rise to another problem in the case. Under the Debtors' proposed plan there are insufficient funds available for distribution to pay this additional administrative expense. As a result the plan must either be amended, if possible, or the case must be dismissed or converted. In order that this case can be brought to a prompt conclusion, and pursuant to the finds and rulings made herein, it is

ORDERED that Jeffrey Weinman, Esq., is allowed an administrative claim under section 330 of the Bankruptcy Code in the amount of $750.90, plus out-of-pocket expenses of $83.50, payable as specified in this opinion and order; and it is

FURTHER ORDERED that the Debtors are afforded fifteen (15) days from the date of issuance of this order to file and prosecute an amended plan, or elect to dismiss or convert this case, failing which this case will be dismissed.