**In re Ruth E. HAGES, Debtor.**

**No. 99–32037–SFM.**

United States Bankruptcy Court,
N.D. California,
San Francisco Division.

Sept. 5, 2000.

E. Lynn Schoenmann, San Francisco, CA, Chapter 7 Trustee.

Patricia A. Cutler, Asst. U.S. Trustee, Stephen L. Johnson, Edward G. Myrtle, Attorney-Advisors, Office of United States Trustee, San Francisco, CA, for United States Trustee.

## MEMORANDUM DECISION

DENNIS MONTALI, Bankruptcy Judge.

### I. *Introduction*

The former chapter 7 trustee, who served before this case was converted to chapter 13, has applied for allowance of her fees. The United States Trustee ("UST") has objected on the grounds that

Bankruptcy Code section 326(c) bars such fees to the extent that, when they are combined with the fees payable to the chapter 13 trustee, the total exceeds the maximum allowable under section 326(a).[1] Under the UST's reading of the statute, in a converted case a chapter 7 trustee could receive little or nothing while the chapter 13 trustee is paid in full, even if the chapter 7 trustee generated all the estate's assets and the chapter 13 trustee simply distributed those assets. The UST claims this is the unfortunate result of the plain words of section 326. This court disagrees.

## II. *Facts* [2]

The debtor filed her voluntary chapter 7 case on June 16, 1999. On the same date E. Lynn Schoenmann ("Schoenmann") was appointed chapter 7 trustee. Schoenmann asserts that she spent 5.1 hours administering the estate, including investigation into the debtor's financial affairs, ascertaining that the debtor's residence has value in excess of her homestead exemption, and retaining a real estate broker. The debtor converted her case to chapter 13, presumably to prevent Schoenmann from selling her home. At the time the case was converted Schoenmann had not taken possession of any funds or assets. On December 20, 1999 the case was converted to chapter 13, and the standing chapter 13 trustee assumed his responsibilities in the case.

On April 24, 2000 Schoenmann filed her First and Final Application for Compensation by Former Chapter 7 Trustee, requesting $1,530.00 in fees, for 5.1 hours of work at $300.00 per hour, (the "Fee Application"). On the same date Schoenmann's attorneys filed an application for $2,037.50 in fees and $79.44 in expenses, of which a total of $1,664.44 was subsequently allowed, and this court confirmed the debt-

or's chapter 13 plan. The plan provides for payment of section 507(a)(1) administrative expense claims, which would normally include the full amount of Schoenmann's and her attorneys' allowed fees.

On April 26, 2000 the UST filed an objection to the Fee Application. The UST did not object to the propriety of Schoenmann's fees, nor to their amount *per se*, but argued that such fees are capped by sections 326(a) and (c). Although the UST noted that several bankruptcy courts have allowed chapter 7 trustees' fees in similar circumstances as administrative claims based on *quantum meruit*, the UST argued that *quantum meruit* fee awards are not allowed in the Ninth Circuit. Instead the UST proposed that this court allow Schoenmann's fees subject to the limitation that the total of her fees, plus the chapter 13 trustee's fees, not exceed the cap in section 326(a).

The UST argued, and Schoenmann does not question, that this court has no authority to reduce the fees payable to the chapter 13 trustee, and therefore the section 326(a) cap would reduce only Schoenmann's fees. The chapter 13 trustee has taken no position regarding Schoenmann's fees, nor otherwise appeared on this matter.

The court originally heard the Fee Application on June 14, 2000. It requested further briefing, and continued the hearing to July 14, 2000. On June 30, 2000 Schoenmann filed her reply to the UST's objection. She argued that under the UST's reading of the statute, the more assets a chapter 7 trustee recovers for distribution to creditors the greater the chapter 13 trustee's fee will be and therefore, ironically, the less the chapter 7 trustee can be compensated. At some point, Schoenmann points out, the chapter 7 trustee could

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and all rule references are to the Federal Rules of Bankruptcy Procedure.

2. The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr.P. 7052(a).

have no compensation, because the chapter 13 trustee's fees would equal or exceed the maximum amount under section 326(a).[3] The UST does not dispute this assertion.

Schoenmann's reply also increased her fee request. She calculated that over the life of the confirmed chapter 13 plan the debtor will make total payments of $13,-613.00. Treating this as the amount distributed, Schoenmann determined her maximum allowable fee under section 326(a) as $2,111.30, and requested allowance of the full amount. The UST filed a supplemental brief on July 18, 2000, after which the matter was taken under submission.

## III. *Discussion*

Section 326 provides, in relevant part:

(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,-000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys

disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

(b) In a case under chapter 12 or 13 of this title, the court may not allow compensation for services or reimbursement of expenses of [a standing chapter 13 trustee] appointed under section 586(b) of title 28, but may allow reasonable compensation under section 330 of this title of [a chapter 13 trustee appointed by the court under section 1302(a) ] for the trustee's services, payable after the trustee renders such services, not to exceed five percent upon all payments under the plan.

(c) If more than one person serves as trustee in the case, the aggregate compensation of such persons for such service may not exceed the maximum compensation prescribed for a single trustee by subsection (a) or (b) of this section, as the case may be.

Four questions are before this court. First, because Schoenmann has not made any distributions—and has not taken possession of any funds or assets at the time of conversion—have *any* moneys been "disbursed or turned over" by her to parties in interest within the meaning of section 326(a), and if so, when? Second, does the statutory cap in section 326(c) bar this

---

3. Schoenmann assumes this court cannot require the standing chapter 13 trustee to pay her fees at the expense of his own. As discussed below, this court need not reach that issue. However, assuming for the sake of discussion that this is so, Schoenmann's reasoning is as follows.

Schoenmann notes that the fees collected by the chapter 13 trustee are a set percentage established by the Attorney General. 28 U.S.C. § 586(e). (The standing trustee does not keep that fee: some it is used to fund the UST System Fund, some of it pays the expenses of the chapter 13 system, and only a portion of it funds what amounts to a salary for the chapter 13 trustee individually. Nevertheless, the chapter 13 trustee collects the entire fee from all payments received under the chapter 13 plan.) Currently the chapter 13 trustee in this district collects 8% of the

debtor's payments. In contrast, the chapter 7 trustee's maximum fees are a declining percentage set by section 326(a).

If payments under a chapter 13 plan total $50,000, the fee collected by the chapter 13 trustee would be $4,000 (8% of $50,000), and if the payments total $200,000, the fee would be $16,000. In contrast, under section 326(a) a chapter 7 trustee's maximum fee on distributions of $50,000 is $5,750 (25% of the first $5,000 plus 10% of the next $45,000); a chapter 7 trustee's maximum fee on disbursements of $200,000 is $13,250 (25% of $5,000 plus 10% of $45,000 plus 5% of $150,000). Therefore, under the UST's reading of the statute, a chapter 7 trustee could receive a maximum of $1,750 if $50,000 is distributed ($5,750—$4,000) and $-0—if $200,000 is distributed ($16,000 exceeds the maximum of $13,250).

court from allowing Schoenmann's fees, or limit those fees by counting the fees to be paid to the chapter 13 trustee toward the maximum amount allowed by section 326(a)? Third, are Schoenmann's fees of equal administrative priority with the chapter 13 trustee's fees, and entitled to be paid simultaneously and *pro rata?* Fourth, in what amount should Schoenmann's fees be allowed?

### A. Moneys "Disbursed or Turned Over in The Case by The Trustee to Parties in Interest"

Schoenmann argues that distributions made by the chapter 13 trustee out of the debtor's chapter 13 plan payments should be imputed to her, citing *In re Rodriguez,* 240 B.R. 912 (Bankr.D.Colo.1999). She starts with $13,613, assuming the debtor makes all the payments under her plan, and calculates her maximum allowable fees under section 326(a) as $2,111.30.

The UST does not dispute that distributions made by the chapter 13 trustee should be deemed to be "moneys disbursed or turned over" by Schoenmann. Instead, the UST believes those moneys should not be considered as "disbursed or turned over" until the chapter 13 trustee has made an actual disbursement.

*Rodriguez* supports the UST's position. It held that "because the fee is capped at a percentage of disbursements to be made. out of [debtor's plan], the fee can properly be paid only as disbursements are made." *Rodriguez,* 240 B.R. at 916. In other words, out of every chapter 13 plan payment made by the debtor and distributed by the chapter ʻ13 trustee, the chapter 7 trustee would receive allowed fees up to the appropriate percentage under section 326(a), starting with 25% of each distribution.

■ This court agrees with the UST that distributions made through the chapter 13 plan should be imputed to the chapter 7 trustee, for purposes of calculating the chapter 7 trustee's maximum fees.

However, this court uses somewhat different reasoning than *Rodriguez,* and disagrees with its holding that the maximum can only be calculated piecemeal, as each plan payment is distributed.

The *Rodriguez* court treated all trustees in any given case as a single "composite" trustee, thereby imputing distributions by the chapter 13 trustee to the chapter 7 trustee for purposes of section 326(a). This analysis led the *Rodriguez* court to combine trustees' fees in applying the section 326(a) cap, limiting the chapter 7 trustee to whatever is left over after the anticipated total fees payable to the chapter 13 trustee. As discussed below, this court interprets the statute to permit payment of the chapter 7 trustee without having to treat both trustees as a single trustee.

■ Nevertheless, this court agrees with the *Rodriguez* that:

It is unacceptable and unwarranted to penalize hard-working interim trustees whose services have contributed to the administration of the bankruptcy estate but who have not actually distributed funds by depriving them of fees even though successor trustees, whether in a case pending under the same chapter or converted to another chapter, are successfully able to make distributions to parties in interest.

*Rodriguez,* 240 B.R. at 915. Chapter 7 trustees need not be penalized in this way. Distributions can and should be imputed without having to resort to a single "composite" trustee with combined fees for purposes of section 326(a).

When a debtor converts a case from chapter 7 to chapter 13 it is often, if not usually, because the chapter 7 trustee has either uncovered assets that otherwise would not be available to creditors or taken some action adverse to the debtor, such as objecting to the debtor's discharge. Schoenmann's work in this case revealed potential equity in the debtor's home above the claimed homestead exemption, which

apparently motivated the debtor to convert to chapter 13. Whether or not the chapter 7 trustee actually turns over cash to the chapter 13 trustee, the chapter 7 trustee turns over an estate that must generate distributions to creditors under a chapter 13 plan that are equal to or greater than they will receive in Chapter 7. 11 U.S.C. § 1325(a)(4). Given these realities, it is entirely appropriate to impute the moneys that will be distributed by the chapter 13 trustee to the chapter 7 trustee for purposes of computing the maximum fee the chapter 7 trustee can charge, and allowing interim fees up to that maximum.[4]

This court is aware of the cases holding that Congress did not intend "moneys" disbursed or turned over to include anything but cash, or possibly cash equivalents. *See, e.g., Staiano v. Cain (In re Lan Associates XI, L.P.)*, 192 F.3d 109, 118 (3d Cir.1999) (acknowledging that term "moneys" in § 326(a) is ambiguous, but holding that Congress did not intend to include credit bids in the trustee's compensation base); *Pritchard v. U.S. Trustee (In re England)*, 153 F.3d 232, 235–237 (5th Cir.1998) ("moneys" did not include unliquidated property transferred to unsecured creditors); *In re Fischer*, 210 B.R. 467, 468–469 (Bankr.D.Minn.1997) (no moneys were "disbursed or turned over" by chapter 7 trustee where case was converted to chapter 13). *But compare, e.g., In re Greenley Energy Holdings of Pa., Inc.*, 102 B.R. 400, 404–405 (E.D.Pa.1989) (including present value of guaranteed contracts in calculation of maximum compensation); *In re Stanley*, 120 B.R. 409, 411–414 (Bankr.E.D.Tex.1990) (including liens remaining on property after sale in calculation of maximum compensation), *disagreed with on other grounds Sousa v. Miguel (In re U.S. Trustee)*, 32 F.3d 1370, 1376–1377 (9th Cir.1994); *see also In re North Am. Oil & Gas, Inc.*, 130 B.R. 473,

479–480 & n. 15 (Bankr.W.D.Tex.1990) (stating, in *dicta*, that it may be appropriate to include distributions of property other than cash, such as "equity instruments, notes, or even assignments," where reducing such assets to cash is not appropriate and cash value can be "easily and readily" quantified).

However, the cases interpreting "moneys" to mean cash or cash equivalents are distinguishable. First, in this case—and all cases converted to chapter 13—actual cash will be distributed through the chapter 13 plan.

■ Second, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") has approved interim fee awards under section 331, based on anticipated disbursements for purposes of calculating the section 326(a) cap. *In re Stewart*, 157 B.R. 893, 896 (9th Cir. BAP 1993). In *Stewart* the trustee had only disbursed $24,662.27, but the BAP held that his compensation could be based on proof that he would disburse $1,347,812.38. *Id.* at 895–898. Therefore this court will use the anticipated plan payments—$13,613—as a basis to calculate the *maximum* fee that Schoenmann can be awarded.[5]

Third, policy reasons favor giving the chapter 7 trustee an incentive for increasing the actual dividends to creditors. *See Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 423–424 (9th Cir.1983) (under Bankruptcy Code, as under predecessor Bankruptcy Act of 1898, purpose of fee cap is to ensure that trustee compensation is "commensurate with trustees' services") (citation omitted); *North Am. Oil & Gas*, 130 B.R. at 479 ("The underlying purpose of section 326(a) is to assure that the trustee's compensation is fairly proportional to job results.") (citations omitted). Moreover, as the BAP recognized in *Stewart*, if interim fees could not be awarded the

---

**4.** If the chapter 7 trustee has already made distributions before conversion, such as administrative expense payments, these could also be counted towards the total amount of distributions in the case.

**5.** As in *Stewart*, this court emphasizes that it has discretion to award a lesser amount, or to deny interim fees altogether.

trustee could be required to wait "years" for compensation, while all other professionals were paid on an interim basis. *Stewart*, 157 B.R. at 897. *See also Greenley Energy*, 102 B.R. at 406–407.

Fourth, allowing the chapter 7 trustees' fees after conversion to chapter 13 is consistent with the numerous cases allowing compensation when a case is voluntarily dismissed by the debtor. *See, e.g., Matter of Pray*, 37 B.R. 27, 30 (Bankr.M.D.Fla. 1983); *In re Flying S Land & Cattle Co., Inc.*, 23 B.R. 56, 58 (Bankr.C.D.Cal.1982). *See also In re Washington*, 232 B.R. 814, 817 (Bankr.S.D.Fla.1999) (applying *Pray* and similar cases in context of conversion from chapter 7 to chapter 13, stating that "[c]ourts have reasoned that 11 U.S.C. § 326 applies to fully administered cases; but, in cases which are not fully administered, through no fault of the Trustee, compensation should still be awarded the Trustee who performs substantial services, but does not disburse any money").

Finally, there is authority in the Ninth Circuit for recognizing "constructive" disbursements in calculating the trustee's fee cap. *Southwestern Media*, 708 F.2d 419, 420–425. *Cf. Staiano*, 192 F.3d at 118 (rejecting *Southwestern Media*). Moreover, "the Ninth Circuit has made it clear in at least two cases that equitable concerns do come into play in compensation issues." *In re Ferris*, 2000 WL 877038 (Bankr.N.D.Cal.2000) (Jaroslovsky, J.),[6] *citing In re Century Cleaning Services, Inc.*, 195 F.3d 1053, 1060 (9th Cir.1999); *In re Hines*, 147 F.3d 1185, 1190–1191 (9th Cir.1998).

As with the trustee's fees years ago in *Southwestern Media*, recognizing a "constructive distribution" by Schoenmann, or imputing the distributions to be made under the chapter 13 plan to her, does not mean she is entitled to the statutory maximum, or to any fees at all. To the con-

trary, it restricts what she can be awarded: no matter how meritorious her work she cannot receive more than the statutory percentage of what will be distributed under the chapter 13 plan.

For all of the foregoing reasons, this court holds that a chapter 7 trustee's maximum fees in a case converted to Chapter 13 should be based on distributions to be made by the chapter 13 trustee under the chapter 13 plan. As discussed below, this does not necessarily mean that every chapter 7 trustee will have an administrative claim on par with other expenses of administration, nor that the maximum percentage of such claim should be paid with every distribution. What it does mean is that chapter 7 trustees can receive *no more than* 25% of total distribution to be made by the chapter 13 trustee under the chapter 13 plan for the first $5,000 of distributions, and then no more than the other percentages set forth in section 326(a).

## B. The Statutory Cap in Section 326(c)

■ The UST argues that more than one person has served as "trustee in the case," and therefore under section 326(c) the aggregate compensation of such persons may not exceed "the maximum compensation prescribed for a single trustee by subsection (a) or (b) of [section 326], as the case may be." 11 U.S.C. § 326(c). The UST urges this court to follow *Rodriguez* and view the chapter 7 trustee and chapter 13 trustee as a single "composite" trustee.

One problem with this reading is that it leads to a very odd result. As Schoenmann has argued, the more value a chapter 7 trustee adds—such as collecting receivables, uncovering hidden assets, and avoiding preferences and fraudulent transfers—the less the chapter 7 trustee can

---

**6.** Although the Westlaw version of the *Ferris* decision currently bears a legend that it "has no value as precedent and is not intended for publication," the undersigned bankruptcy judge has verified with Judge Jaroslovsky that such legend is incorrect and will be removed, and that *Ferris* may be cited.

receive after conversion to chapter 13. A chapter 7 trustee who turns over substantial assets for distribution will receive nothing.[7]

Moreover, as *Rodriguez* obliquely acknowledges, its reading of the statute creates an inconsistency between converted cases in which *more than one person* is appointed to serve as a trustee, and converted cases in which the *same person* is appointed as the trustee. Under *Rodriguez*, section 326(c) does not apply in the latter situation, but does apply in the former. *See Rodriguez*, 240 B.R. at 914 n. 1. There is no reason why Congress should have made this distinction, and in fact it runs counter to what "Congress supposed." *Id.*

The UST argues that the strict and literal reading of the statute cannot be obviated based on equitable concerns. However, in this court's view the statute is ambiguous. Moreover, the UST's reading is contrary to the statutory scheme and the legislative history. Subsection 326(c) refers to the "trustee in the case." The "case" could mean the case as a whole or the case that is discussed in the earlier subsections of section 326, namely "a case under chapter 7 or 11" or "a case under chapter 12 or 13." 11 U.S.C. § 326(a) and (b). Using the latter reading, section 326(c) means that if more than one person serves as trustee in the "case under chapter 7" (or chapter 11, 12 or 13) then the aggregate compensation of such persons may not exceed the formula under the applicable subsection, 326(a) or (b). How-

ever, if the case is converted, it is no longer a "case under chapter 7" but a case under chapter 13 (or chapter 11 or 12) and therefore section 326(c) is inapplicable.[8] *See also Ferris*, 2000 WL 877038 at p.*1 ("a literal reading of the Bankruptcy Code does not forbid compensation in this situation [conversion from chapter 7 to chapter 13]; it is merely silent on the subject").

Of the two interpretations, this court favors reading "the case" in section 326(c) to refer to the case "under chapter 7" (or chapter 11, 12 or 13), consistent with the type of case previously referred to in section 326(a) and (b). This reading follows the ordinary canons of statutory construction. *See In re Eilbert*, 162 F.3d 523, 527 (8th Cir.1998) (applying interpretive canons *noscitur a sociis* (a term is known from its associates) and *ejusdem generis* (general words in an enumeration are construed as similar to more specific words in the enumeration), and holding that "annuity" under state exemption statute meant something "akin to future earnings," and therefore single-premium "annuity" purchased in contemplation of bankruptcy out of inheritance, to avoid paying personal injury damages, did not quality as "annuity"); *Taylor v. Slick*, 178 F.3d 698, 702 (3rd Cir.1999) (automatic stay's bar on "continuation" of judicial, administrative, or other action or proceeding did not bar "continuation" of sheriff's sale, because "continuation" in the former context means "carrying forward" of a proceeding whereas in the latter context it means "postpone-

---

7. See footnote 3. In this case the UST's reading of the statute would significantly limit but not bar Schoenmann's fees. According to this court's calculations, if $13,613 is counted as moneys distributed under Section 326(a), then the maximum distribution to the chapter 7 trustee would be $2,111.30. Deducting $1,089.04 for the fees payable to the chapter 13 trustee (8% of $13,613), the UST's reading would limit Schoenmann to a maximum of $1,022.26.

8. This court recognizes that section 326(a) limits the chapter 7 trustee's compensation to

disbursements in "the case," and therefore under this court's reading of the statute a chapter 7 trustee would ordinarily be limited to disbursements in the case "under chapter 7." However, under the reasoning in the preceding part of this discussion the disbursements to be made under the chapter 13 plan are imputed to the chapter 7 trustee, as if they had been made while the case was pending under chapter 7. The fact that they have not yet actually been made (and never will be made under chapter 7) is irrelevant.

ment"), *cert. denied,* —— U.S. ——, 120 S.Ct. 797, 145 L.Ed.2d 672 (2000).

This court's reading of section 326(c) is more consistent with the statutory scheme than the alternative. In section 326(a), Congress worked out a precise formula with a sliding scale of percentages to limit the maximum that a chapter 7 trustee or chapter 11 trustee may be awarded. In section 330 Congress gave the bankruptcy courts precise guidelines to limit the actual award to a reasonable amount. In section 331, Congress authorized interim payments. Given this context of careful statutory provisions it is highly unlikely that Congress intended the capricious result argued by the UST if a case is converted. *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956) ("In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy" *quoting United States v. Boisdore's Heirs,* 49 U.S. 113, 122, 12 L.Ed. 1009, 8 How. 113, 121 (1850)), *aff'd sub nom Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

This court's reading is also consistent with the legislative intent for Section 326(c) in particular. As held by the BAP, section 326(c) is intended to prevent "double-dipping" by two trustees who perform the same functions. The BAP held that no such "double-dipping" was involved when a case was converted from chapter 11 to chapter 7, because "the services performed here by the Chapter 11 trustee differ significantly from those that will be performed by the Chapter 7 trustee." Therefore, each trustee could be awarded fees up to the section 326(a) maximum. *Gill v. Wittenburg (In re Financial Corp. of America),* 114 B.R. 221, 224–225 (9th Cir. BAP 1990), *aff'd* 946 F.2d 689 (9th Cir. 1991) (adopting BAP's reasoning, and remanding for fee award), *citing, inter alia,* H. Rept. No. 95–595, 95th Cong., 1st Sess., at pp. 327–28 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. at p. 38 (1978),

U.S.Code Cong. & Admin.News 1978, pp. 5787, 5824, 6283–6285; *and Yale Mining Corp.,* 59 B.R. 302 (Bankr.W.D.Va.1986).

Moreover, the *Gill* reasoning avoids the inconsistency that *Rodriguez* creates between converted cases where a single person serves as trustee and cases where more than one person serves as trustee. In *Gill* the same person was both the chapter 11 trustee and the chapter 7 trustee, but that did not change the court's analysis.

The UST points out that this case involves different chapters of the Bankruptcy Code than *Gill,* and that *Gill* distinguished an earlier case that held "when a case is converted from chapter 7 to chapter 13, at least two trustees will serve in the same case, and under section 326(c), their aggregate fee cannot exceed the statutory maximum of section 326(a) ...." *Gill,* 114 B.R. at 225, *quoting In re Schneider,* 15 B.R. 744, 746 (Bankr.D.Kan. 1981). The UST is correct that *Gill* distinguished *Schneider*—*Gill* noted that *Yale Mining* was closer to the facts before it than *Schneider* because *Yale Mining* also involved conversion from chapters 11 to chapter 7. However, *Gill* also noted that *Yale Mining* was "painstaking in its interpretation of the legislative intentions behind section 326(c)." *Gill,* 114 B.R. at 225. Those legislative intentions are as applicable in this case as they were in *Gill.*

Thus, in a case involving conversion from chapter 7 to chapter 13 another court has persuasively stated:

A Chapter 7 trustee's duties encompass investigating, liquidating, handling and distributing assets of the Chapter 7 estate. *See* § 704. While a Chapter 13 trustee performs some of the same or similar investigative and fiduciary functions of a Chapter 7 trustee, the work of the Chapter 13 trustee is focused primarily on administration of the Chapter 13 debtor's plan, a very different job. *See* § 1302.

Since the functions of Chapter 7 and Chapter 13 trustees are fundamentally different, where a Chapter 7 case is converted to Chapter 13, trustee compensation should be determined independently under the standards of § 330, and applying § 326(c) as a further limiting factor would be inappropriate. *See In re Yale Mining Corp.*, 59 B.R. at 305–307.

*In re Colburn*, 231 B.R. 778, 783 (Bankr. D.Or.1999).

■ The *Rodriguez* case criticizes *Gill* and *Yale Mining*, interpreting them to hold that there is more than one bankruptcy "case." However, as this court reads section 326(c) it is not necessary to hold that conversion from chapter 7 to chapter 13 creates a new bankruptcy case. Rather, section 326(c) applies only where more than one person serves as trustee in the "case under chapter 7" (or chapter 11, 12 or 13). That is not the present situation, so section 326(c) is inapplicable.[9]

### C. The Relative Priority of Schoenmann's Fees and the Fees Collected by the Chapter 13 Trustee, and the Timing of Payments to Schoenmann

■ Schoenmann assumes, the UST argues, and this court does not decide, whether it has the power to limit the fees collected by the standing chapter 13 trustee because the amount collected is a fixed percentage set by the Attorney General under 28 U.S.C. § 586(e). *See* 11 U.S.C. § 326(b); *Dunivent v. Schollett (In re Schollett)*, 980 F.2d 639, 645 (10th Cir. 1992); *In re Savage*, 67 B.R. 700, 701–709 (D.R.I.1986); 3 *Collier on Bankruptcy*

*(15th ed.)* (L. King ed.) ¶ 326.02[3][b] at p. 326–14, text accompanying n. 39. *But see In re Melita*, 91 B.R. 358 (Bankr.E.D.Pa. 1988).

This court need not decide the issue, nor the relative priority of Schoenmann's fees and the chapter 13 trustee's fees, nor whether one should be paid before the other or at a faster rate than the other. *See Schneider*, 15 B.R. 744 (apportioning fees 50% to chapter 7 trustee and 50% to chapter 13 trustee). Neither the chapter 13 trustee nor any other party has objected on any of these grounds, and in the absence of a different directive the chapter 13 trustee is required to pay all allowed expenses of administration *pro rata* and simultaneously. This is the natural result of sections 507(a)(1), 1322(a)(2) and 1326(b)(1), the standard form of chapter 13 plan in this district, and the confirmed plan in this case. *See Rodriguez*, 240 B.R. at 916 (no priority as between fees payable to chapter 7 and chapter 13 trustee); *but cf. In re Collins*, 210 B.R. 538, 541 (Bankr.N.D.Ohio 1997) (chapter 7 trustee's fees would be paid as a "secondary" tier administrative expense after conversion to chapter 13) (criticized by *Rodriguez*).

Unless and until this court orders otherwise, or Schoenmann agrees to a different treatment, she should receive *pro rata* distributions with other administrative expense claims out of each distribution made by the chapter 13 trustee.

### D. Allowance of Schoenmann's Fees

■ Schoenmann initially applied for $1,530.00 based on 5.1 hours of work at $300 per hour. After the UST's objection she amended her application to request

---

**9.** The UST also argues that *quantum meruit* fee awards are not allowed in the Ninth Circuit, citing *In re Weibel*, 176 B.R. 209, 211 (9th Cir. BAP 1994), *In re Shirley*, 134 B.R. 940, 943–944 (9th Cir. BAP 1992), *and In re Atkins*, 69 F.3d 970, 973 (9th Cir.1995). The UST is correct that *quantum meruit* cannot supply a basis to award fees where the Bankruptcy Code does not otherwise permit them; but that is not the real issue. As *Rodriguez*

observed, *quantum meruit* is "essentially what section 330 mandates. The real problem is not whether a fee should be allowed, the question is the effect of the 326 cap." *Rodriguez*, 240 B.R. at 914. *Cf. In re Moore*, 235 B.R. 414 (Bankr.W.D.Ky.1999) (criticized by *Rodriguez* as one of the cases allowing fees on a *quantum meruit* principle notwithstanding the section 326 cap).

$2,111.30. Schoenmann has shown no basis for an award in excess of a reasonable hourly rate. Therefore her amendment requesting the statutory maximum of $2,111.30 will be denied. Since no party has disputed that Schoenmann spent 5.1 hours administering this case, nor has any party objected to her rate of $300 per hour, the court finds that $1,530 is reasonable compensation for her actual, necessary services in this case. Schoenmann's application for compensation of $1,530 is approved.

IV. *Conclusion*

This court declines to limit Schoenmann's fees to a maximum of $1,022.26, as the UST's reading of section 326(c) would require. Section 326(c) is only applicable where more than one person serves as trustee in a case under a single chapter of the Bankruptcy Code. It is inapplicable where the case is converted from chapter 7 to chapter 13. Schoenmann is entitled to a chapter 13 administrative claim of $1,530.

Within ten days of the date of service of this Memorandum Decision, Schoenmann should submit a proposed order allowing her fees as set forth above, and should comply with B.L.R. 9021–1 and 9022–1.