**In re Carol Jean KUHN, Debtor.**

**No. 04–62392 JPK.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Feb. 3, 2006.

Daniel L. Freeland, Esq. and Sheila A. Ramacci, Esq., Freeland & Associates, P.C., Highland, IN, on behalf of the Chapter 7 Trustee.

George Livarchik, Esq., Livarchik & Farahmand, Chesterton, IN, on behalf of the Debtor, Carol Jean Kuhn.

*ORDER ON OBJECTION TO CLAIM/OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN*

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

This order concerns separate contested matters which, although not consolidated,

due to their substantial interrelation have been tied together for the purposes of determination.

The first contested matter arises from the debtor's ("Kuhn") objection to claim # 2 filed by Daniel L. Freeland ("Freeland"), who had been the duly acting and qualified Chapter 7 Trustee in Kuhn's Chapter 7 case prior to its conversion to a case under Chapter 13. Kuhn's objection was filed on May 11, 2005; on May 18, 2005, Freeland filed a response to that objection.

The second contested matter arises from the objections made by Freeland to the Chapter 13 plan, and the pre-confirmation amendments thereto, filed by Kuhn. The first of these objections, filed on April 13, 2005, related to Kuhn's original Chapter 13 plan filed on October 14, 2004.[1] On May 4, 2005, Kuhn filed a first amended Chapter 13 plan, with respect to which Freeland filed an objection on May 10, 2005. Kuhn filed a second amended plan on September 28, 2005, in response to which Freeland filed his objection on October 4, 2005.

The Court has jurisdiction over the contested matters pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and N.D.Ind. L.R. 200.1(a)(2). The contested matter concerning Kuhn's objection to Freeland's claim is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), while the contested matter concerning Freeland's objection to Kuhn's Chapter 13 plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

As stated, these two matters are inherently interrelated. Freeland's claim asserts that he is entitled to the allowance of a claim in the amount of $4,551.61 pursuant to 11 U.S.C. § 507(a)(1) for attorney's fees and expenses which he/his firm incurred as attorney for the Chapter 7 Trustee in Kuhn's Chapter 7 case. Freeland's objection, to the extent to which this decision applies, asserts that the plan does not provide for his administrative claim and thus does not comply with 11 U.S.C. § 1322(a)(2).[2] A pre-hearing conference was held on both objections on August 17, 2005. The parties each filed their respective legal memoranda on October 17, 2005, as required by the Court's order entered on August 25, 2005.

The facts are simple; the issues between the parties are predominantly questions of law as applied to the facts of the case. Carol Jean Kuhn initiated case number 04–62392 by her filing of a voluntary Chapter 7 petition on May 13, 2004. Daniel L. Freeland was appointed as the Chapter 7 Trustee in that case. By order entered on August 31, 2004, the Court authorized Daniel L. Freeland to act as his own attorney—i.e., attorney for the Trustee—"and to carry out all duties as said attorney until further Order of this Court". On October 8, 2004, Kuhn filed a motion pursuant to 11 U.S.C. § 706(a) to convert her Chapter 7 case to a case under Chapter 13, to which Freeland filed an objection on October 21, 2004. The issues raised in this latter contested matter, and the Court's determination of those issues, is set out in the Court's order entered on March 23, 2005, under docket record entry # 69. In that order, the Court construed 11 U.S.C.

---

1. The objection was delayed with the Court's permission due to the need to resolve a contested matter which concerned Freeland's objection to Kuhn's motion to convert her Chapter 7 case to a case under Chapter 13.

2. Paragraph 2 of the objection to the second amended plan asserts that the plan does not comply with the provisions of 11 U.S.C. § 1325(a)(4). However, that matter appears to have been resolved between the parties, and others, and it is solely the administrative claim assertion which will be addressed by this order.

§ 706(a) to *not* provide the debtor with an absolute right to convert a Chapter 7 case to a case under Chapter 13; stated that there is in essence a presumption that a case may be so converted; but stated that conversion could be denied under "extraordinary circumstances", as defined in the decision. Because the determination was necessary to the issues raised in that contested matter, the Court also construed the effect of an exemption claimed by Kuhn's husband, Jess James Kuhn, in his Chapter 7 case (case number 03–65542 in the United States Bankruptcy Court for the Northern District of Indiana, Hammond Division). As explained in that order, the Court determined that "extraordinary circumstances" did not exist which would preclude Kuhn from converting her Chapter 7 case to a case under Chapter 13, and the Court entered an order so converting the case.

It is first necessary to delineate the issues before the Court with respect to the two contested matters which are the subject of this decision. The principal issues are whether a claim for Chapter 7 Trustee's attorney's fees and expenses incurred in a Chapter 7 case prior to conversion of that case to a Chapter 13 case may constitute an allowed claim in the Chapter 13 case; and, if so, the manner in which the amount of the claim is to be determined and, when determined, the priority the claim has for distribution under a Chapter 13 plan.

Most of the case law cited by both parties is irrelevant to these issues, focusing as it does on issues concerning a claim for *statutory compensation* pursuant to 11 U.S.C. § 330(a)(1)(A)/11 U.S.C. § 326(a) asserted by a Chapter 7 trustee in a case converted to Chapter 13. The case before the Court does not concern Freeland's assertion of a claim for statutory compensation, but rather the assertion of a claim for compensation for professional services rendered by the attorney for the Trustee. Thus, for example, several of the leading cases on the allowance of a Chapter 7 Trustee's statutory compensation as a claim in the Chapter 13 case following conversion—*In re Rodriguez*, 240 B.R. 912 (Bankr.D.Colo.1999); *In re Murphy*, 272 B.R. 483 (Bankr.D.Colo.2002); *In re Hages*, 252 B.R. 789 (Bankr.N.D.Cal.2000); and *In re Silvus*, 329 B.R. 193 (Bankr. E.D.Va.2005)—are not at all on point. Interestingly, in a case cited by Kuhn—*In re Fischer*, 210 B.R. 467 (Bankr.D.Minn. 1997)—the court noted in footnote 1 that, despite disallowing statutory compensation, it had allowed a claim for fees for the Chapter 7 Trustee's attorney as a claim in the Chapter 13 case. Similarly, in *Hages, supra.*, although the court imposed a limitation on the manner in which statutory compensation of a Chapter 7 Trustee would be allowed in a superceding Chapter 13 case, the court separately awarded the Trustee's attorney's fees in nearly the amount requested, without discussion.

Cases which address the allowance of a Chapter 7 Trustee's attorney's fees include *In re Washington*, 232 B.R. 814 (Bankr. S.D.Fla.1999) and *In re Collins*, 210 B.R. 538 (Bankr.N.D.Ohio 1997). The former has little analysis for its holding, but does refer extensively to *Collins*. This Court deems the reasoning of *Collins* to be precise and correct.

■ A Chapter 7 Trustee is authorized to employ an attorney to assist him/her in the performance of his/her duties in administering the Chapter 7 case; 11 U.S.C. § 327(a) and (d). Certain limitations are imposed upon the compensation of an attorney employed by the Trustee by 11 U.S.C. § 328(a) and (b), principal among them that the court may "allow compensation for the trustee's services as such attorney ... only to the extent that the

trustee performed services as attorney ... for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney ... for the estate". The criteria applicable to an award of compensation are stated in 11 U.S.C. § 330(a)(1) as follows [3]:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329 the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

The criteria to be utilized by the Court in determining the amount of compensation to be awarded are stated in 11 U.S.C. § 330(a)(3) and (4) as follows [4]:

> (3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
>
> (4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—
>
> (I) unnecessary duplication of services; or
>
> (ii) services that were not—
>
> (I) reasonably likely to benefit the debtor's estate; or
>
> (II) necessary to the administration of the case.

11 U.S.C. § 348 specifies the effect of conversion of a Chapter 7 case to a case under Chapter 13. Subparagraph (a) of that section states that the conversion of the case "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief". 11 U.S.C. § 348(d) then states:

> (d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

As stated in the foregoing section, a claim "specified in section 503(b)" is *not* treated as if that claim arose immediately prior to the filing of the Chapter 7 petition, and thus the administrative quality of a claim under § 503(b) is not affected by conver-

---

3. The pre-BAPCPA statute applies to this case.

4. The pre-BAPCPA statute applies to this case.

sion. 11 U.S.C. § 507(a)(1) provides a first priority for administrative expenses allowed under 11 U.S.C. § 503(b), and § 503(b)(2) provides that allowed administrative expenses include "compensation and reimbursement awarded under section 330(a) of this title".

Thus, it is beyond question that an attorney for a Chapter 7 Trustee is entitled to a claim under 11 U.S.C. § 507(a)(1)/11 U.S.C. § 503(b)(2) for reasonable compensation and reimbursement of expenses, when the Chapter 7 case is converted to a case under Chapter 13.

■ The next issue to be confronted is the manner in which the Chapter 7 Trustee's attorney's award of fees and expenses is to be paid as an administrative claim in the Chapter 13 case.[5] The court in *Collins* determined that this claim was a "second tier" administrative claim, as would be the case, for example, under 11 U.S.C. § 726(b) with respect to administrative claims arising in a Chapter 11 case subsequently converted to a case under Chapter 7. There is an appealing symmetry to this result. However, a more appealing symmetry arises as a result of the amendment made to 11 U.S.C. § 1326(b) by BAPCPA by the addition of § 1326(b)(3), which provides that any pre-conversion compensation allowed to a Chapter 7 Trustee is to be paid monthly by pro rating the amount of the allowed compensation over the term of the plan by means of monthly payments not to exceed the amount specified in § 1326(b)(3)(B). Given the fact that there is no definitive provision regarding this issue in a pre-BAPCPA case, the adoption of the BAPCPA provision stated in 11 U.S.C. § 1326(b)(3) is a sensible result. The Court thus holds that in the circumstances of this case, any compensation

awarded to Freeland's attorney must be paid in the manner provided by 11 U.S.C. § 1326(b)(3) in order for a plan to meet the confirmation requirements of 11 U.S.C. § 1325(a)(1).

■ We now come to the significant factual issue raised by Kuhn with respect to Freeland's claim # 2. Kuhn essentially contends that the services for which compensation is sought were not necessary to the administration of the Chapter 7 case, and that it would be unfair—given the fact that the Court allowed her to convert her Chapter 7 case to a case under Chapter 13—to allow compensation to be recovered for opposing her attempt to do so. The criteria to be employed by the Court are those stated in 11 U.S.C. § 330(a)(3), as set out above. First, there is no issue in this case as to the elements stated under § 330(a)(3)(A), (B), (D), (E) and (F). As stated in the Court's order of August 25, 2005, at the pre-hearing conference held on August 17, 2005, Kuhn's counsel stipulated that the debtor did not contest the extent of the legal services rendered by the attorney for the Trustee, the time spent with respect to those services, or the rate charged with respect to those services. The crux of Kuhn's objection is the element stated in § 330(a)(3)(C), which is worth repeating:

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title.

Kuhn's argument is essentially that the services for which compensation is sought related nearly exclusively to Freeland's opposition, as Kuhn's Chapter 7 Trustee, to her motion to convert her case to a case

---

**5.** It is clear that the claim is payable without interest, in accordance with the provisions of 11 U.S.C. § 1322(a)(2).

under Chapter 13. Kuhn takes the position that Freeland should have known at the time he filed the objection that applicable law held that her conversion was not undertaken in "bad faith", and that in the face of that law he chose to proceed anyway. Kuhn also complains of certain actions undertaken by Freeland subsequent to the entry of the Court's order by which her Chapter 7 case was converted to Chapter 13; however, with an exception to be noted later in this decision, Freeland is not claiming any compensation for post-conversion services.

The Court respectfully disagrees with Kuhn's counsel. Prior to the time that the Trustee's objection was filed, the Court had conducted hearings in open court in other cases in which it had held that a debtor's "right" to convert a case from Chapter 7 to Chapter 13 under 11 U.S.C. § 706(a) was not absolute, and the Court had conditioned the conversion of several prior cases on the debtor's providing certain protection to creditors in the Chapter 13 case. It is true that the Court had not issued a written decision specifying the parameters within which § 706(a) would be applied, but the general view of the Court on the "absolute right" position under § 706(a) was known to counsel who regularly appeared at hearings held in open court, particularly those who appeared at the monthly Chapter 7 Trustee motion days held by the Court on Friday mornings.

Freeland phrased his objection in terms of "bad faith", and in fact a number of courts which have held that the right to convert under § 706(a) is not absolute have adopted a standard which requires bad faith on the part of the debtor to deny or condition conversion. It should be borne in mind that unfortunate threads run through the fabric of the pre-BAPCPA Bankruptcy Code and cases decided under it—a weave continued under BAPCPA—which equate any asserted reason for any number of things as implicating "bad faith" on the part of the debtor.[6] "Bad faith" has become the rubric for the assertion of *any* reason that the filing of a case, or the conversion of the case, or the proposed terms of a plan—offends principles of the Bankruptcy Code, either real or fantasized. The cry of "bad faith!" has become so much a part of the bankruptcy lexicon that a party cannot be faulted for seeking to bring within its penumbra issues which have nothing to do with the actual *bona fides* of a particular action. The Court deems the assertion that Freeland's objection on the basis of "bad faith" was ungrounded to be without basis: the crux of Freeland's objection to conversion of Kuhn's case from Chapter 7 to Chapter 13 was the prejudicial effect on creditors, and he cannot be faulted for phrasing this contention in the common parlance of the statutory and caselaw dialectic.

A portion of Kuhn's memorandum addresses law which has no relevance to this decision, reciting as it does what other courts had held in relation to the issues decided by the order entered on March 23, 2005 with respect to § 706(a). While it was known by certain members of the bankruptcy bar that the Court did not view § 706(a) to impart an absolute right to conversion, no one—including the

---

**6.** As an illustration of this, try applying the provisions of 11 U.S.C. § 362(c)(3) within the strict conceptual framework of "bad faith" as that section directs. For example, a debtor whose subsequent case evidences a change in circumstance which provides increased income for the funding of a plan in certain circumstances must still overcome what the statute phrases as a presumption of a case "filed not in good faith", even if the reason for the dismissal of the prior case was the debtor's injury on a job which resulted in an inability to work for an extended period of time.

Court—knew the specific test which would be employed by the Court under that section in advance of the determination stated in that order.

■ Kuhn in part argues that Freeland's services for which compensation is requested were rendered unnecessary because Freeland lost, and Kuhn was allowed to convert. First, success or failure in an argument—especially one in which the Court's position on an issue is unknown—is not a factor in the analysis required by § 330(a)(3)(C). Second, the Court takes notice of the fact that Kuhn's second amended plan provides for 100% distribution to her and her estranged husband's joint creditors, a result which the Court is confident would not have adhered had Freeland, as the Chapter 7 Trustee, not interceded. Moreover, Kuhn misreads the Court's decision which stated the legal bases for analysis under § 706(a). Freeland's objection proceeded on the premise that the exemption claimed by Jess James Kuhn in his Chapter 7 case shielded only $7,500.00 of his equity in the property, and did not have the effect of removing the couple's residence from administration in his Chapter 7 case. As the Court's decision of March 23, 2005 found, Freeland was correct. This then left open the possibility that the Chapter 7 Trustee in Jess Kuhn's case could move to reopen that case, and could then sell the property pursuant to 11 U.S.C. § 363(h), applying the divisible proceeds apportioned to Jess Kuhn, after deduction of his $7,500.00 exemption, to the claims of creditors—every one of whom was a joint creditor of both Jess and Carol Kuhn—in that case. While the Court's decision indicates that the reopening of the case under the circumstances of its being fully administered and closed was not a foregone conclusion, the Court did not in any manner decide that reopening would not be allowed. Free-

land's scenario was that if Carol Kuhn's Chapter 7 case were not allowed to convert to a Chapter 13, Jess Kuhn's Chapter 7 case could be reopened, and the two cases could then be consolidated for the purposes of administering the residential property for the benefit of their joint creditors. The only reason the Court did not sustain the objection and prevent Carol Kuhn's conversion was because the Court deemed that result to be potentially achievable solely in Jess Kuhn's Chapter 7 case, and thus there were no "extraordinary circumstances" which justified preventing Carol Kuhn from seeking to do whatever she could to save the residence in a Chapter 13 case. Freeland, as the Trustee charged with the administration of Kuhn's Chapter 7 case, had a duty to "collect and reduce to money the property of the estate for which the trustee serves"; 11 U.S.C. § 704(1)—for the benefit of Kuhn's creditors, who were identical to the creditors in Jess Kuhn's Chapter 7 case. The mechanism by which he chose to perform his duty did not succeed; however, it is disingenuous of Kuhn to suggest that the provision for payment of unsecured joint creditors in her second amended plan would have been included in that plan had Freeland not undertaken the action which he did.

The Court holds that the legal services reflected in the compensation requested in claim # 2, together with reimbursement of expenses, were both necessary to the administration of Kuhn's Chapter 7 case, and beneficial at the time at which they were rendered toward the completion of, Kuhn's case. In the context of 11 U.S.C. § 330(a)(4)(A)(ii)(I) and (II), the services and expenses *were* both reasonably likely to benefit the debtor's estate, and necessary to the administration of the case.

■ The next issue is the amount of the claim asserted by Freeland which should

be allowed under 11 U.S.C. § 507(a)(1) in Kuhn's Chapter 13 case. The Court has an independent duty to review compensation requested in accordance with the principles of applicable law, whether or not an objection on any particular ground to that compensation has been asserted; *In re Silvus*, 329 B.R. 193, 204 (Bankr.E.D.Va. 2005). In reviewing Exhibit "A" attached to claim # 2, the Court determines that the following adjustments should be made:

■ 1. The preparation of a motion to extend time for objection to the granting of discharge and for the deadline to object to exemptions is an ordinary administrative responsibility of a Chapter 7 Trustee, and therefore is not allowable as a service rendered by the attorney for the Trustee. The one-half hour charge for this service is disallowed, and thus the requested compensation is reduced by $92.50.

■ 2. Requested compensation includes an entry on November 18, 2004 for "travel to and attendance at trial on conversion". In this District, travel time is compensated at one-half of the ordinary rate charged for legal services. The Court deems the travel time to be one hour, and thus compensation for services on November 18 is reduced by $92.50.

■ 3. The Court's order converting Kuhn's Chapter 7 case to a case under Chapter 13 was entered on March 23, 2005. At that point, compensable services of the attorney for the Chapter 7 Trustee terminated. Thus, the entries for 1.2 hours on March 28, 2005 and for .50 hours on March 29, 2005 are disallowed, resulting in reduction in the total amount of $340.00.

The Court thus finds that claim # 2 is allowed in the amount of $3,823.00 for legal services, plus $203.61 for reimbursable expenses.

IT IS ORDERED that Kuhn's objection to claim # 2 is denied, subject to the adjustment of compensation made by the Court, and that claim # 2 is allowed as a claim entitled to priority under 11 U.S.C. § 507(a)(1)/11 U.S.C. § 503(b)(2) in the amount of $3,823.00 with respect to legal services rendered, plus $203.61 as reimbursable expenses.

IT IS FURTHER ORDERED that Freeland's objection to confirmation of Kuhn's Chapter 13 plan is sustained, and that Kuhn shall file with the Court an agreed immaterial modification—approved by Freeland and by the Chapter 13 Trustee—within 30 days from the date of entry of this order which provides for payment of claim # 2 in the manner determined by this order.[7]

---

7. The Court deems the necessary modification to be immaterial. Kuhn's second amended plan provides for funding necessary to pay 100% of the joint general unsecured debts designated in her schedules. As such, at this time the plan is significantly over-funded: The claims register in this case establishes that the total of filed unsecured claims as of the claim filing deadline is $1,131.55, and thus the modification effected by this order will not require a diminution in the 100% dividend which the plan now provides for general unsecured creditors.

The Court also notes that given the foregoing fact, the financial burden imposed upon Kuhn by this decision is not significant. However, even if it had been, the result would have been the same.